UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEEKSHA K. SINGH,

                               Plaintiff,

        v.

NEW YORK STATE DEPARTMENT OF
  TAXATION & FINANCE,
INTERNAL REVENUE SERVICE,
ERIE COMMUNITY COLLEGE,
MR.  LOUIS J. CERCONE, JR.,
BRISBANE CONSULTING GROUP, LLC,
MS.  EVELYNE O'SULLIVAN,
MR.  AJIT SINGH,
COUNTY OF ERIE,
MR.  WILLIAM D.  REUTER,
MS.  CONSTANCE MARCUS,
MS.  JACQUELINE BOGDAN, and
LARRY S.  STOLZENBURG,

                             Defendants.

|  |  |
|---|---|
| | **DECISION**<br>**and**<br>**ORDER**<br>------------------------------<br>**REPORT**<br>**and**<br>**RECOMMENDATION**[1] |
| | **06-CV-00299C(F)** |

_____

| APPEARANCES: | DEEKSHA K.  SINGH, *Pro Se*<br>Box 1778<br>Amherst, New York 14226 |
|---|---|
| | ERIC T. SCHNEIDERMAN<br>Attorney General, State of New York<br>Attorney for Defendants New York State<br>  Department of Taxation & Finance, and Marcus<br>STEPHANIE J. CALHOUN<br>Assistant New York Attorney General, of Counsel<br>Main Place Tower<br>Suite 300A<br>350 Main Street<br>Buffalo, NY 14202 |

---

[1] Pending before the court are five motions to dismiss filed by various Defendants as well as Plaintiff's motion for leave to file a second amended complaint.  Although the motions to dismiss are dispositive, and the motion to file a second amended complaint is nondispositive, the closely related nature of the issues presented in all six pending motions are addressed in this combined Decision and Order/Report and Recommendation in the interest of judicial economy and clarity.

WILLIAM J. HOCHUL, JR.
UNITED STATES ATTORNEY
Attorney for Defendant Internal Revenue Service
JANE B. WOLFE
Assistant United States Attorney, of Counsel
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

HODGSON RUSS LLP
Attorneys for Defendants Erie Community College,
  Erie County, and Reuter
ADAM W.  PERRY, and
JOSHUA FEINSTEIN, of Counsel
The Guarantee Building
Suite 100
140 Pearl Street
Buffalo, New York 14202-4040

JEREMY A. COLBY
ERIE COUNTY ATTORNEY
Attorney for Defendants Erie Community College and
  County of Erie
DAVID J.  SLEIGHT
Assistant Erie County Attorney, of Counsel
Erie County Department of Law
95 Franklin Street
16th Floor
Buffalo, New York 14202

JAECKLE FLEISCHMANN & MUGEL LLP
Attorneys for Defendants Erie Community College
  and Reuter
MARISSA A.  COHELEY, of Counsel
12 Fountain Plaza
Suite 800
Buffalo, New York 14202

DAMON MOREY LLP
Attorneys for Defendants Cercone and
  Brisbane Consulting Group, LLC
BERNARD SCHENKLER, of Counsel
200 Delaware Avenue
Suite 1200
Buffalo, New York 14202

WATSON BENNETT COLLIGAN JOHNSON &
 SCHECHTER LLP
Attorneys for Defendant Singh
MELISSA ANN DAY, of Counsel
12 Fountain Plaza
Suite 600
Buffalo, New York 14202

CONNORS & VILARDO, LLP
Attorneys for Defendant Bogdan
MEGHAN A.  BROWN, of Counsel
1000 Liberty Building
424 Main Street
Buffalo, New York 14202

AMIGONE, SANCHEZ, MATTREY & MARSHALL, LLP
Attorneys for Defendant Stolzenburg
B.P. OLIVERIO, of Counsel
1300 Main Place Tower
350 Main Street
Buffalo, New York 14202

## **JURISDICTION**

This action was referred to the undersigned by Honorable John T. Curtin on

March 2, 2011 for all pre-trial matters.  The matter is presently before the court on

motions to dismiss filed by Defendants New York State Department of Taxation &

Finance and Marcus on December 7, 2010 (Doc. No. 52), Defendants Brisbane

Consulting Group, LLC and Cercone on December 9, 2010 (Doc. No. 53), Defendant

Bogdan[2] on December 30, 2010 (Doc. No. 59), Defendant Internal Revenue Service on

February 28, 2011 (Doc. No. 74), and Defendant Singh on March 9, 2011 (Doc. No.

82), and on Plaintiff's motion to file a second amended complaint, filed on February 18,

---

[2] Although sometimes referred to in the pleadings as "Bogdan Hart," the court, because sued as
"Bogdan" and in the interest of consistency, refers to this Defendant as "Bogdan."

2011 (Doc. No. 73).

## BACKGROUND

Plaintiff Deeksha K. Singh ("Plaintiff"), filed a complaint (Doc. No. 1) ("Complaint"), commencing this civil rights action on May 9, 2006, alleging employment discrimination Defendants New York State Department of Taxation & Finance ("NYSDOTF"), New York State Department of Civil Service ("NYSDCS"), and New York State Office of State Comptroller ("NYS Comptroller's Office"), discriminated against Plaintiff in connection with Plaintiff's employment with NYSDOTF, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.  In particular, Plaintiff, on six unnumbered pages of factual allegations, not separately enumerated, alleged discrimination based on her sex (female), and national origin (India), resulting in harassment, unequal terms and conditions of employment, retaliation for complaining about such discrimination and harassment, and constructive termination of Plaintiff's employment with the NYSDOTF.  Complaint ¶¶ 13 and 14.  Alleging that other NYSDOTF employees suffered similar employment discrimination, Plaintiff requested the case be considered a class action. *Id*. ¶ 19.

By order filed September 20, 2007 (Doc. No. 14), District Judge Curtin, pursuant to Fed.R.Civ.P. 12(b)(6), dismissed the action as against the NYSDCS and NYS Comptroller's Office, and denied Plaintiff's request to have the case considered as a class action.  On September 4, 2008, Judge Curtin referred the matter to United States Magistrate Judge H.  Kenneth Schroeder for all pretrial matters.  (Doc.  No.  31).  On October 15, 2007, Anna Marie Richmond, Esq.  ("Richmond"), was appointed as

Plaintiff's counsel in this action.  On December 18, 2007, Richmond moved to withdraw

as Plaintiff's counsel.  By Order filed February 7, 2008 (Doc. No. 22), Judge Curtin

granted Richmond's motion.  Plaintiff has since proceeded in this action *pro se* and has

not requested assignment of counsel.

A Case Management Order signed by Judge Schroeder on February 22, 2010

(Doc.  No.  38), established, *inter alia*, March 26, 2010, as the deadline for motions to

amend the pleadings.  On March 26, 2010, Plaintiff moved to file an amended

complaint adding new parties and causes of action.  (Doc. No. 40).  Because no

objections to Plaintiff's motion to file an amended complaint were filed, Judge

Schroeder, by Text Order entered September 28, 2010 (Doc. No. 48), granted Plaintiff's

motion to file an amended complaint.  Accordingly, on October 25, 2010, Plaintiff filed

the amended complaint (Doc. No. 49) ("Amended Complaint"), as well as a motion for a

court order directing the U.S. Marshal to serve the Amended Complaint. (Doc. No. 50),

and the motion was granted on November 4, 2010 (Doc. No. 51).  All Defendants have

since appeared in this action.

The Amended Complaint consists of 30 unnumbered single-space pages, with

the factual allegations set forth in unnumbered paragraphs on pages 5 through 30,

incorporates by reference the original complaint, Amended Complaint at 11, names

several new defendants, including the Internal Revenue Service ("IRS"), Erie

Community College ("ECC"), Louis J. Cercone, Jr. ("Cercone"), Brisbane Consulting

Group, LLC ("Brisbane Consulting"), Evelyne O'Sullivan ("O'Sullivan"), Plaintiff's former

husband Ajit Singh ("Defendant Singh"), the County of Erie ("Erie County"), William D.

Reuter ("Reuter"), Constance Marcus ("Marcus"), and Jacqueline Bogdan ("Bogdan"),

against whom a myriad of new claims are asserted, including violations of Plaintiff's federal civil rights, employment discrimination based on gender, marital status, parental status, religion, national origin, disability, and race, retaliation based on Plaintiff's exercise of legal rights, interference with Plaintiff's right to vote, the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), and numerous causes of action sounding in New York common law tort including personal injury, deprivation and interference with property rights, slander, injurious falsehood, and fraud.  With few exceptions, the Amended Complaint largely fails to specify against which Defendant each claim is asserted.

On December 7, 2010, Defendants NYSDOTF and Marcus (together, "State Defendants"), filed a Notice of Motion to Dismiss; to Sever Claims and for a More Definite Statement (Doc. No. 52) ("State Defendants' Motion"), supported by the attached Memorandum of Law in Support of Motion to Dismiss for a More Definite Statement and to Sever Claims ("State Defendants' Memorandum").  On December 9, 2010, Defendants Brisbane Consulting and Cercone (together, "Brisbane Defendants"), filed a Notice of Motion to Dismiss Amended Complaint (Doc. No. 53) ("Brisbane Defendants' Motion"), supported by the attached Memorandum of Law in Support of Motion to Dismiss Amended Complaint (Doc. No. 53-1) ("Brisbane Defendants' Memorandum"), the Declaration of William F.  Savino, Esq., in Support of Motion to Dismiss the Amended Complaint (Doc. No. 53-2) ("Savino Declaration"), and exhibits A through K (Doc.  Nos.  53-3 - 53-20) ("Brisbane Defendants' Exhibits").  On December 30, 2010, Defendant Bogdan filed a motion to dismiss (Doc. No. 59) ("Bogdan's Motion"), supported by the attached Affidavit of Meghan M. Brown, Esq. ("Brown

Affidavit").

On January 5, 2011, Defendants Erie County, ECC and Reuter (together, "County Defendants"), filed an answer to the Amended Complaint (Doc. No. 60).  On January 25, 2011, County Defendants filed an amended answer to the Amended Complaint (Doc. No. 68).  On February 8, 2011, Defendant Stolzenburg filed an answer to the Amended Complaint (Doc. No. 70).

On February 18, 2011, Plaintiff filed a motion seeking leave to file a second amended complaint (Doc. No. 73) ("Plaintiff's Motion"), supported by the attached Affidavit/Affirmation in Support of Motion ("Plaintiff's Affidavit").[3]  Also attached to Plaintiff's Motion is Plaintiff's Reply to Defendants' Motion to Dismiss, Cross-Motion for Leave to File Second Amended Complaint Joining Additional Defendants and Memorandum in Support (Doc. No. 73-1) ("Plaintiff's Memorandum").[4]

On February 28, 2011, the IRS filed a motion to dismiss the Amended Complaint (Doc.  No.  74) ("IRS's Motion"), supported by the attached Affidavit of Assistant United States Attorney Jane B. Wolfe (Doc. No. 74-1) ("Wolfe Affidavit"), and exhibits A and B (Doc. Nos. 74-2 and 74-3) ("IRS Exh(s). __").  The IRS also filed on February 28, 2011, a Memorandum of Law in Support of the Defendant Internal Revenue Service's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 75) ("IRS Memorandum").

---

[3] Although titled an Affidavit/Affirmation, the document does not contain separately enumerated paragraphs and, as such, the court references Plaintiff's Affidavit by the relevant page, rather than paragraph.

[4] Plaintiff's Memorandum through ¶ 37 is filed as Doc. No. 73, whereas Plaintiff's Memorandum beginning with ¶ 38 is filed as Doc. No. 73-1.  Although Plaintiff's Memorandum describes the new claims and names those Plaintiff seeks to add as defendants, to date, no copy of Plaintiff's proposed second amended complaint has been filed.

On March 1, 2011, State Defendants filed a Memorandum of Law in Reply to Plaintiff's Response and in Further Support of the Defendants [*sic*] Motion to Dismiss for a More Definite Statement and to Sever Claims (Doc. No. 76) ("State Defendants' Reply").  On March 2, 2011, Brisbane Defendants filed a Reply Memorandum of Law on Behalf of Defendants Louis J. Cercone, Jr. and Brisbane Consulting Group, LLC (Doc. No. 77) ("Brisbane Defendants' Reply").  Bogdan filed on March 4, 2011 the Reply Affidavit of Meghan A. Brown in Support of Motion to Dismiss (Doc. No. 79) ("Brown Reply Affidavit").

On March 9, 2011, Defendant Singh filed a motion to dismiss (Doc. No. 82) ("Defendant Singh's Motion"), supported by the attached Affirmation of Melissa A. Day, Esq. in Support of Motion to Dismiss Plaintiff's Amended Complaint Pursuant to FRCP 12(b) ("Day Affirmation"), with attached exhibits A and B ("Defendant Singh's Exh(s). __"), and Defendant Ajit Singh's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint Pursuant to FRCP 12(b) ("Defendant Singh's Memorandum").

On April 7, 2011, Plaintiff filed Plaintiff's Reply to Defendants' Motion to Dismiss and Memorandum in Support (Doc. No. 87) ("Plaintiff's Response Memorandum").  On April 8, 2011, the IRS filed Defendant Internal Revenue Service's Memorandum of Law in Response to Plaintiff's Motion to File a Second Amended Complaint and in Reply to Plaintiff's Response to its Motion to Dismiss (Doc. No. 88) ("IRS Reply").

On April 11, 2011, Defendants ECC and Reuter ("ECC Defendants") filed Defendant's [*sic*] Memorandum of Law Opposing Leave to Amend ("ECC Defendants' Memorandum").  On April 20, 2011, Defendant Singh filed the Affirmation of Melissa A.

8

Day, Esq., in Reply to Plaintiff's Opposition to Ajit Singh's Motion to Dismiss Plaintiff's

Amended Complaint Pursuant to FRCP 12(b) (Doc. No. 93) ("Day Reply Affirmation").

Oral argument was deemed unnecessary.

Based on the following, the motions to dismiss filed by State Defendants as to

Defendant Marcus, Brisbane Defendants, Bogdan, IRS, and Singh (Docs. Nos. 52, 53,

59, 74, and 82) should be GRANTED,  with the exception that insofar as Bogdan's

motion requests  sanctions, the motion should be DENIED.  State Defendants'

alternative requests to sever and for a more definite statement are DISMISSED as

moot, without prejudice or, alternatively, are DENIED.  Plaintiff's motion for leave to file

a second amended complaint (Doc. No. 73) is DENIED, and construing such motion as

seeking leave to supplement, is GRANTED.  Further, insofar as any claims are

asserted against Defendants O'Sullivan and Stolzenburg, who have not moved to

dismiss, such claims should be DISMISSED pursuant to the court's inherent authority to

manage its docket, and the state claims should be DISMISSED against the County

Defendants for failure to state a claim.

## **FACTS**[5]

Plaintiff Deeksha K. Singh ("Plaintiff"), was born in India and, with her parents

and brother, emigrated to the United States in 1988 when she was 10-years old.

Amended Complaint at 10.[6]  Plaintiff, who is ethnically Indian, obtained United States

---

[5] Taken from the pleadings and motion papers filed in this action.

[6] Because, as noted, Background, *supra*, at 4-5, both Plaintiff's Complaint and Amended
Complaint are comprised of unnumbered pages, without each paragraph separately enumerated,
references to the Complaint and the Amended Complaint are only to the page number that would be

citizenship derivative of her parent's naturalization, and follows the Hindu religion. *Id.* In 1995, Plaintiff graduated from a local public high school and enrolled in Canisius College ("Canisius College" or "the college"), where she studied accounting. *Id*. Meanwhile, in 1996, Plaintiff briefly returned to India where she was married to Ajit Singh ("Defendant Singh"), pursuant to an arrangement between the parents of Plaintiff and Defendant Singh. *Id*. After emigrating to the United States in July 1996 to be with his new wife, Defendant Singh suffered from undisclosed medical problems, causing Plaintiff to sacrifice her own health and to quit an unidentified job to care for her husband and to assist her husband in adjusting to life in this country, resulting in financial difficulties and placing great stress on Plaintiff and causing Plaintiff to develop unspecified medical problems. *Id*. While still married to Plaintiff, Defendant Singh obtained a "green card" evidencing Defendant Singh's lawful admission into the United States for permanent residence and, in May 1998, earned a Master's degree in Mechanical Engineering from the State University of New York at Buffalo. *Id*.

In 1999, Plaintiff graduated from Cansius College with her Bachelor's degree in accounting and commenced employment at the accounting firm of Ernst & Young LLP ("Ernst & Young"), in Buffalo, like her brother, Devesh Singh ("Devish Singh"), who also worked at Ernst & Young, having received a Bachelor's degree in accounting from the college in 1997. Amended Complaint at 10. Defendant Jennifer Bogdan ("Bogdan") matriculated in the same accounting program as Plaintiff, also receiving her Bachelor's degree in accounting from the college in 1997, at which time Bogdan commenced

---

assigned to the relevant page were the pages numbered.

working for Ernst & Young. *Id.* at 10-11. Plaintiff maintains that while employed at Ernst & Young, Bogdan disseminated rumors that Ernst & Young hired Plaintiff because of her minority status. *Id.* at 11. In July 2000, Plaintiff left Ernst & Young and obtained employment with Freed, Maxick, Sachs and Murpy, LLC ("Freed Maxick"), a local accounting firm. *Id.* Plaintiff maintains that Bogdan knew some other Freed Maxick employees and through such employees, spread the same hiring decision rumors about Plaintiff at Freed Maxick as at Ernst & Young. *Id.* In 2001, Plaintiff obtained employment with Defendant NYDOTF, commencing work on December 21, 2001, at the Buffalo District Office. *Id.* Certain unidentified former Ernst & Young employees were former NYDOTF employees of the agency's Buffalo District Office. *Id.*

Plaintiff maintains she was advised on her first day of employment at NYDOTF by her supervisor, Michael Van Wagnen ("Van Wagnen"), that Van Wagnen had hoped a male would have been hired for Plaintiff's position, and that Van Wagnen refused to speak with Plaintiff during the office's Christmas party held later that day. Amended Complaint at 5. During one of Plaintiff's first field audits, Van Wagnen informed Plaintiff that because he was not on the interviewing committee, he was not involved in the decision to hire Plaintiff, but that he was "stuck" with Plaintiff. *Id.* Van Wagnen also inquired as to Plaintiff's citizenship and whether Plaintiff was born in the United States. *Id.* When Plaintiff responded that she was born in India, emigrated with her parent to the United States as a child, and obtained citizenship derivative of her parents' naturalization, Van Wagnen replied that Plaintiff was not a "real" American, laughed, and asked whether Plaintiff came to this country by boat. *Id.*

According to Plaintiff, Van Wagnen always remained distant from Plaintiff, failed

to properly answer Plaintiff's job-related questions, was never friendly but frequently rude, made remarks about having to teach Plaintiff "our English," and stated he disliked all things foreign, "from food to people."  Amended Complaint at 5.  Plaintiff maintains that other NYSDOTF employees, aware of Van Wagnen's dislike of foreigners, saw opportunity for advancement by making derogatory comments about Plaintiff's Indian culture and Hindu religion including, for example, jokes about cow worshiping and keeping goats in the garage to pay dowry to Plaintiff's in-laws.  Plaintiff's co-workers also allegedly confused Plaintiff's ethnicity with Muslim-terrorists.  *Id*. at 5, 8.  Plaintiff further maintains that NYSDOTF discriminated against women, particularly those who were not married or were divorced, especially single mothers with young children.  *Id*. at 8.  According to Plaintiff, in the Personal Income Tax Section of NYSDOTF, the department in which Plaintiff worked, all female employees hold Tax Auditor I positions, along with one male employee, and all supervisory positions, including Tax Auditor II and the Section Head, are male.  *Id*.; Complaint at 11.

Plaintiff, who became pregnant shortly after commencing her job with NYSDOTF, alleges that the discrimination she faced in the workplace caused her much stress and anxiety, leading to premature labor, such that Plaintiff's son, born in November 2002, is developmentally delayed.  Amended Complaint at 8.  Plaintiff maintains that Van Wagnen had only disdain for both marriage and children because Van Wagnen felt trapped in his own unhappy marriage and was looking forward to his son growing up and moving out.  *Id*. at 6, 8.

Plaintiff alleges that in June 2003, her in-laws visited from India and caused such problems that on July 4, 2003, Plaintiff's husband, Defendant Singh, talked about

divorcing Plaintiff.  Amended Complaint at 8.  Plaintiff feared that upon learning of her impending divorce, Van Wagen would subject Plaintiff to even more workplace hostilities.  *Id*.  On September 18, 2003, Defendant Singh filed for divorce and in a job performance review issued by Van Wagen on September 19, 2003, Plaintiff was advised her work "needs improvement" and that she should find another job.  *Id*. at 6.  The job performance review also indicated that Plaintiff's maternity leave had interfered with Plaintiff's completion of formal training which would have made Plaintiff more efficient at her job, but neither Van Wagen nor Section Head Jorge Reyes ("Reyes"), took any steps to assist Plaintiff with obtaining the training, leaving Plaintiff to try, albeit unsuccessfully, to secure the training on her own.  *Id*.  Van Wagen also told Plaintiff to look for other employment.  *Id*. at 6-7.

Plaintiff moved out of the marital home on September 20, 2003.  Amended Complaint at 6.  On September 22, 2003, Plaintiff went to Chicago on a business trip with co-workers Michael Shanahan ("Shanahan"), and Mark Stein ("Stein").  *Id*.  Plaintiff was also accompanied by her mother and then nine-month old son.  *Id*.  Plaintiff explains that she did not leave her son home with her parents or with Defendant Singh, because Plaintiff had not yet been awarded custody of her son in the matrimonial proceedings and, if Defendant Singh had demanded, Plaintiff's parents would have legally been required to give the child to Defendant Singh whom, not being an American citizen, Plaintiff considered a flight risk.  According to Plaintiff, prior to departing for the Chicago trip, she received word from Van Wagen that it was acceptable for Plaintiff's mother and son to accompany Plaintiff on the trip, and Plaintiff paid all expenses for her mother and son's travel and accommodations.  *Id*.  Plaintiff

maintains that on September 26, 2003, when it was time to leave the hotel in Chicago and travel to the airport for the return flight home, Shanahan and Stein, allegedly because of Plaintiff's status as a divorcing woman, went to the airport, abandoning Plaintiff, her mother and son at the hotel, despite earlier arrangements that all five would meet in the hotel lobby and travel together to the airport.  *Id.*

Upon returning to work at the Buffalo District Office on September 29, 2003, Plaintiff alleges the workplace hostilities increased with Plaintiff being criticized for errors for which other co-workers were not.  Amended Complaint at 6.  At a meeting on September 29, 2003, with the District Audit Manager ("DAM") Art Maloney ("Maloney"), Reyes, Van Wagen, and Plaintiff, Van Wagen allegedly pointed to numerous flaws Van Wagen perceived about Plaintiff including, for example, that Plaintiff would not be able to handle an adversarial role against taxpayers and their representatives.  *Id.* at 6. According to Plaintiff, her female co-workers attributed Van Wagen's criticisms to the fact that Plaintiff was undergoing a divorce and that other female NYSDOTF employees had experienced similar hostilities and that one female co-worker felt forced to stay in an abusive marriage because she could not afford to both divorce her husband and lose her job.  *Id.*

On October 30, 2003,[7] Van Wagen advised Plaintiff she should quit her job and focus on her home life, and that Plaintiff should "go home and do as your husband says," and thereby tried to force Plaintiff "to succumb to domestic abuse."  Amended Complaint at 7.  Van Wagen provided Plaintiff with the telephone number of

---

[7] The court considers Plaintiff's reference to "October 30, 2004" a typographical error given that Plaintiff's last day of work at the NYSDOTF was December 23, 2003.

14

NYSDOTF Associate Personnel Director Jim Bishop ("Bishop") in Albany who, when Plaintiff telephoned, expressed he had a problem with Van Wagnen not retaining Plaintiff, advising that Van Wagnen had failed to provide Plaintiff with required training to ensure Plaintiff would successfully complete her probationary period, and that it was "extremely unusual" for an NYSDOTF employee to not pass probation.  *Id*.

On November 4, 2003, Van Wagnen informed Plaintiff he was waiting to hear from Maloney whether to grant Plaintiff an extension of her probationary period to allow Plaintiff to complete required training, but that Reyes had advised Van Wagnen not to provide any letter of recommendation for Plaintiff as Plaintiff maintains Van Wagnen had previously promised.  Amended Complaint at 7.  Another job performance evaluation was done in Plaintiff's absence on November 13, 2003, was not discussed with Plaintiff, but was submitted to NYSDOTF's Personnel Office without Plaintiff seeing it until she asked for a copy the next morning.  *Id*.

At a December 17, 2003, meeting with Maloney, Reyes, and Van Wagnen, Maloney informed Plaintiff he realized Plaintiff's recent employment review was "not favorable and is exaggerated," but that a 26-week extension of Plaintiff's probationary period did not insure that Plaintiff had 26 weeks to improve her job performance, advising Plaintiff to seek other employment.  Amended Complaint at 7.  Plaintiff maintains that throughout the meeting, Reyes repeatedly inquired as to the status of Plaintiff's pending divorce.  *Id*.  Plaintiff further maintains that on the reverse side of the job evaluation form, Form HRM-203, used by NYSDOTF, a section titled "Second Probation Period Recommended" provides that "A second probationary period may be used only if the assignment and supervisor are changed."  Complaint at 9-10.

On December 19, 2003, Plaintiff spoke with former NYSDOTF Personal Income Tax Section Team Leader Don Schifferle ("Schifferle") about Van Wagenen's negative job performance evaluation of Plaintiff.  Amended Complaint at 7.  Schifferle responded that Van Wagenen had had problems with "certain females" including a former NYSDOTF employee "Zakia"[8] from the United Arab Emirates ("UAB").  *Id*. at 7-8.  Schifferle explained that Zakia and Van Wagenen sat at the same desk.  *Id*. at 8.   Van Wagenen did not want to "deal" with Zakia or train her, and when Zakia was later transferred to Schifferle's group, Schifferle "was surprised at how much [Zakia] did not know.  Then I [Schifferle] trained her properly and she was fine."  *Id*. at 9.  In response to Plaintiff's further inquiries, Schifferle stated Zakia was not fired from NYSDOTF but "she just got tired of everything 'they' did to her and left."  *Id*.  Schifferle allegedly also advised Plaintiff to "stay away" from Van Wagenen's "clique."  *Id*.

On December 21, 2003, Plaintiff telephoned her union representative, Steve Nawrocki ("Nawrocki"), to complain about Van Wagenen's treatment, and specifically mentioned that Maloney had taken no steps to assign Plaintiff to a different supervisor which the extension of Plaintiff's probationary terms required.  Amended Complaint at 9.  When Plaintiff asked for union assistance in the matter, Nawrocki stated he could not do anything.  *Id*.  At Nawrocki's suggestion, Plaintiff asked Reyes to reassign Plaintiff to a different team to avoid Van Wagenen's unfair treatment, but Reyes refused, stating that Reyes's signature on Plaintiff's evaluation indicated Reyes agreed with Van Wagenen's assessment, and that Reyes expected significant improvement in Plaintiff's

---

[8] Plaintiff's references to "Zakia" and, later, to "Zakis Abbas" and "Abbas" are to the same person.

16

job performance or Plaintiff would be terminated.  *Id*.  When Plaintiff responded that her job performance would significantly improve if she were reassigned to a new supervisor as Zakia was, Reyes continued to refuse Plaintiff's request.  *Id*.

On December 23, 2003, Plaintiff tendered her resignation which Plaintiff maintains made Van Wagnen "very happy."  Amended Complaint at 9.  Plaintiff maintains the working conditions she endured at NYSDOTF compelled her to resign. Complaint at 10-11.  Later that same day, after tendering her resignation, Plaintiff received a telephone call from Bishop inquiring about Plaintiff's resignation.  *Id*. at 10. Plaintiff advised she was working under hostile conditions, that the second probationary period was actually intended as a ploy to build a case justifying the eventual termination of Plaintiff's employment, that Plaintiff's supervisor had not been changed as required, and that there were problems in the Buffalo Office with managers' attitudes concerning different cultures.  *Id*.  Plaintiff further stated she had no choice but to resign from NYSDOTF and take a job she had been offered as an Internal Auditor at ECC.  *Id*. Plaintiff commenced employment at ECC on January 5, 2004.  *Id*. at 28.

On September 17, 2004, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") charging NYSDOTF with unlawful discriminatory practices relative to Plaintiff's employment.   In 2004, after Plaintiff resigned from NYSDOTF and commenced working at ECC, Plaintiff was introduced to Abbas at a social gathering at the home of Defendant Constance Marcus ("Marcus"), a NYSDOTF employee.  Amended Complaint at 12.  Plaintiff and Abbas discussed the similar maltreatment each had experienced while working for Van Wagnen at NYSDOTF.  *Id*. According to Plaintiff, Marcus became concerned that she would be held responsible

for introducing Plaintiff and Abbas and would face repercussions at work, causing

Marcus to feel "compelled to find something about the plaintiff which may be used as a

defense" by NYSDOTF with regard to the EEOC discrimination charge. *Id*. at 12. In a

second, later gathering in Marcus's home, Plaintiff declared in the presence of others

that she always votes in political elections for the Democratic candidates, that she

believed all illegal immigrants should be "legalized," and had answered questions

regarding illegal immigrants on an internet web-site Plaintiff had joined. *Id*. at 12-13.

Plaintiff maintains Marcus, with the assistance of unidentified ECC employees, located

the internet web-site and found Plaintiff's profile, and then analyzed Plaintiff's

statements on the web-site "to see if there was anything that could be used against the

plaintiff," and created another profile of Plaintiff based on Plaintiff's responses to the

web-site's questions. *Id*. at 13. Plaintiff maintains such actions by Defendants[9] so

intimidated Plaintiff that Plaintiff has ceased expressing any political, religious or other

opinions so as to avoid Defendants' accusations of wrong-doing, and that Defendant

Chief Administrative and ECC Financial Officer William D. Reuter ("Reuter"), directed

unspecified "ECC employees to conduct acts of retaliation" against Plaintiff. *Id*.

In particular, Plaintiff maintains that Reuter advised Plaintiff of a fraud complaint

lodged against ECC employee Michael Wilson ("Wilson"). Amended Complaint at 13.

Plaintiff, as an ECC internal auditor, conducted an audit of Wilson's work that revealed

Wilson had filed a discrimination complaint against ECC. *Id*. According to Plaintiff,

---

[9] Plaintiff makes numerous references to undifferentiated "Defendants" and an unspecified medical condition. Where Plaintiff names the Defendant to whom she is referring or specifies the medical condition from which she suffers, the court does likewise. Otherwise, the court's references to "Defendants" and "medical condition[s]" are to those unspecified by Plaintiff.

ECC's management handles such discrimination claims by accusing the complainant of fraud or incompetence. *Id*.

Plaintiff maintains "ECC management" agreed to assist NYSDOTF in falsely accusing Plaintiff of the asserted fraud and wrongdoing. Amended Complaint at 13. According to Plaintiff, her attempts to address fraud in her role as an internal auditor caused the perpetrators of the asserted fraud and ECC management to retaliate against Plaintiff by repeatedly making statements to Plaintiff that are subject to more than one interpretation, such that if Plaintiff complained about a particular statement, she would be informed she had misinterpreted the statement. *Id*. Plaintiff further maintains such intimidation has deprived Plaintiff of her freedom of speech and press, and the right to vote. *Id*. at 14.

Plaintiff alleges Marcus asked several, unidentified, law enforcement officers to investigate Plaintiff's history to determine if Plaintiff could be accused of any crime. Amended Complaint at 14. According to Plaintiff, Marcus had shared with Plaintiff details of Marcus's own unhappy situation, including marital discord, and then spread false rumors about Plaintiff that were similar to details Marcus had revealed about her own husband, including that Plaintiff married Defendant Singh because he was wealthy, but had planned to divorce Defendant Singh after having children, despite knowledge that Defendant Singh was poor when Plaintiff married him, that after emigrating to the United States, Defendant Singh obtained employment that provided him with modest income, and that it was Plaintiff, rather than Defendant Singh, who filed for divorce. *Id*. When Plaintiff confronted Marcus about the rumors, Marcus accused Plaintiff of being a pathological liar and told others the same. *Id*. at 15. Marcus also allegedly learned of

the rumors Bogdan disseminated about Plaintiff and spread them around ECC. Amended Complaint at 14-15.

According to Plaintiff, ECC employees attempted to obtain proof that Plaintiff is a pathological liar, including installing a tracking device on Plaintiff's vehicle so as to determine the veracity of Plaintiff's timecards and use of sick time, as well as with whom Plaintiff associated, so as to conduct acts of retaliation against Plaintiff. Amended Complaint at 15. Plaintiff also maintains Defendants spoke to Plaintiff's son's child care providers and teachers seeking any information that could be used against Plaintiff. *Id*.

The DHR's Decision ("DHR Decision"),[10] issued November 8, 2005, found no probable cause that Respondents[11] had engaged in any unlawful discriminatory practices based on Plaintiff's sex, marital status, or national origin but, rather, the evidence established Plaintiff voluntarily resigned her employment with NYSDOTF to accept a position with ECC. On November 21, 2005, Plaintiff requested a review of the DHR's Decision by the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff included as an exhibit to the EEOC a letter from Zakia Abbas ("Abbas") ("Abbas Letter")[12] explaining that from January 1996 to June 1998, Abbas worked as an Income Tax Auditor for the NYSDOTF where Van Wagnen was her supervisor. Abbas describes several incidents of racial and gender discrimination similar to those claimed

---

[10] A copy of the DHR's Decision is attached to the Complaint as pages 16 and 17.

[11] Plaintiff's DHR Complaint also named as Respondents NYSDCS and NYS Comptroller's Office.

[12] A copy of the Abbas Letter is attached to the Complaint as pages 12 and 13.

by Plaintiff, including regular and repeated disparaging remarks by Van Wagnen, until Reyes reassigned Abbas to a team headed by Schifferle.  On February 9, 2006, the EEOC issued its decision ("EEOC Decision")[13] adopting the findings set forth in the DHR's Decision, and advising Plaintiff she had 90 days from receipt of the EEOC Decision to commence legal action.  Plaintiff filed the instant action on May 9, 2006.

Plaintiff contacted Mark Walling, Esq. ("Walling"), to represent her in this action against NYSDOTF, who refused to represent Plaintiff allegedly after being contacted by NYSDOTF.  Amended Complaint at 11.  On October 15, 2007, Anna Marie Richmond, Esq. ("Richmond"), was appointed as Plaintiff's counsel in this action.  *Id*. at 12. Plaintiff maintains that NYSDOTF contacted Richmond to request Richmond act to Plaintiff's detriment in connection with the matter, but that when confronted by Plaintiff, Richmond admitted only to speaking with Assistant New York Attorney General Michael Siragusa ("Siragusa"), who then represented NYSDOTF.  By Order filed February 7, 2008 (Doc. No. 22), Judge Curtin granted Richmond's motion, filed December 18, 2007 (Doc. No. 21), to withdraw as Plaintiff's counsel (Doc. No. 21).  Plaintiff has since proceeded in this action *pro se*, without requesting further appointment of counsel.

As an ECC employee, Plaintiff belongs to a union, the Administrators Association of Erie Community College ("AAECC").  Plaintiff told some ECC employees the name of the candidate for whom Plaintiff intended to vote in an AAECC election, which was held in the office of ECC employee Terry Pereira.  Amended Complaint at 15.  Plaintiff maintains she later learned her vote was not private, but was checked by

---

[13] A copy of the EEOC's Decision is attached to the Complaint as page 15.

ECC employees to determine whether Plaintiff had actually voted in accordance with her stated intentions.  *Id*.  Plaintiff reported the alleged violation of her right to vote to ECC Associate Vice President of Finance Richard Schott ("Schott"), and ECC Chief Accountant Karen Maloney ("Maloney").  *Id*.  Plaintiff also maintains that in 2008, she intended to vote in the United States Presidential election for Barack Obama, but that Plaintiff was so intimidated by questions posed by "individuals" regarding her intended vote, and the fact that her recent vote case in the AAECC election had not remained private, that Plaintiff was too intimidated to cast any vote in the 2008 Presidential election.  *Id*. at 15-16.

Plaintiff's father, Devendra Singh ("Devendra Singh"), is an ECC employee, and meddles in Plaintiff's personal life.  Amended Complaint at 16.  Plaintiff maintains that Devendra Singh requested Marcus to provide information regarding Plaintiff's romantic relationships and character, allegedly because Devendra believed the rumors and conspiracy theories disseminated by Marcus about Plaintiff, including that Plaintiff is a lesbian or is promiscuous and has affairs with married men.  *Id*.  Plaintiff maintains that while living in her parents' home between 2008 and 2010, Devendra Singh assisted with searches of Plaintiff's private life conducted by Defendants by allowing Defendants into the home to search Plaintiff's personal belongings and computer and by providing Defendants with information regarding Plaintiff's computer activities, thereby allowing Defendants to hack into Plaintiff's personal e-mail account.  *Id*.  Plaintiff further maintains her father provided information regarding Plaintiff's unspecified medical condition to Defendants.  *Id*. at 16.

According to Plaintiff, upon learning of Plaintiff's litigation against NYSDOTF,

Defendant Bogdan participated in conspiring against Plaintiff by enticing Plaintiff to seek employment with Defendant IRS.  Amended Complaint at 17.  In particular, Bogdan informed Plaintiff's brother, Devesh Singh, about the "wonderful" employment opportunities at the IRS, causing Devesh Singh to encourage Plaintiff to apply at the IRS.  *Id*.  Although Plaintiff never applied to work at the IRS, she maintains that Defendants conducted a background check that contained erroneous information and was not kept confidential, and was used "to devise plans to create false accusations which would show a 'pattern' of conduct" to ruin Plaintiff's chance of working for the IRS.  *Id*.

Marcus, assisted by ECC employees, allegedly obtained information from Plaintiff's work computer, including personal e-mails, which were disseminated to external parties.  Amended Complaint at 17.  Such information included research on the child support laws of different states, and the incidence of child abuse.  *Id*.  According to Plaintiff, Marcus learned that Plaintiff was a member of an on-line dating service and, with the help of unidentified Defendants, "selected a pedophile from the state of Georgia to engage the plaintiff in a romantic relationship," and "conspired to marry the plaintiff to a pedophile and inflict suffering on the plaintiff and her minor son" such that Plaintiff suffered severe emotional distress.  *Id*.

Plaintiff further maintains Marcus colluded with Defendant Singh with regard to Plaintiff's matrimonial action, including contacting Defendant Evelyne O'Sullivan, Esq. ("O'Sulivan"), who represented Plaintiff in her divorce.  Amended Complaint at 17-18.  In particular, it is alleged that O'Sullivan wrongly informed Plaintiff she could have seek to have child support payments collected from Defendant Singh by means of income

execution through the Erie County Child Support Collection Unit until and unless Defendant Singh missed making three child support payments.  *Id*.

Plaintiff alleges Defendants Louis J. Cercone ("Cercone"), and his employer Brisbane Consulting Group, LLC ("Brisbane Consulting"), appointed by New York Supreme Court in connection with Plaintiff's matrimonial proceedings to evaluation the enhanced earnings capacity of Plaintiff and Defendant Singh based on their educational degrees, ignored relevant facts, including inflation and Defendant Singh's actual work history, to insure Plaintiff received such that Plaintiff received less in the matrimonial settlement.  Amended Complaint at 18.  Plaintiff maintains that O'Sullivan and Cercone had an ongoing professional relationship such that the appointment of Brisbane Consulting and Cercone to perform the valuation was a conflict of interest, and O'Sullivan refused to present Plaintiff's request for a second expert's opinion to the matrimonial judge and also failed to question Defendant Singh regarding Plaintiff's unspecified medical problems.  *Id*.

Plaintiff, acting on her own, requested Defendant Larry Stolzenburg ("Stolzenburg"), an accountant, prepare separate enhanced earnings capacity valuations according to generally accepted procedures for such reports.  Amended Complaint at 19.  Plaintiff alleges Stolzenburg refused to prepare the enhanced earnings capacity valuations as agreed and, instead, contacted other matrimonial attorneys whom Plaintiff intended to contact with regard to her divorce, requesting the attorneys attempt to convince Plaintiff not to seek all the property rights to which Plaintiff believed she was entitled in connection with her impending divorce.  *Id*. Stolzenburg and Cercone are, according to Plaintiff, the only two experts in the Western

24

New York area qualified to perform enhanced earnings capacity valuations, and the reports of both Stolzenburg and Cercone were essentially identical, which Plaintiff maintains demonstrates both experts "deliberately manipulated the calculations to arrive at the results they desired." Amended Complaint at 19-21. Plaintiff was extremely concerned about the enhanced earnings capacity valuations because an undervaluation of Defendant Singh's earnings capacity would result in lower child support payments to Plaintiff for the benefit of their young son, especially given Plaintiff's unspecified "chronic medical conditions that adversely affect her ability to obtain and retain gainful employment." *Id*. at 20. Plaintiff maintains that O'Sullivan, Stolzenburg and Cercone conspired with each other to pressure Plaintiff into settling the matrimonial matter to Plaintiff's detriment, that New York Supreme Court Justice John M. Curran ("Justice Curran"), who presided over Plaintiff's divorce proceedings, relied on the enhanced earnings capacity report prepared by Cercone, resulting in a reduction of the child support Plaintiff received from Defendant Singh, and deliberately causing Plaintiff emotional harm. *Id*. Justice Curran entered the judgement of divorce on November 29, 2006, the financial aspects of which Plaintiff appealed to the Appellate Division, Fourth Department where the decision was affirmed. *Id*. at 20-21.

Plaintiff maintains Justice Curran, Cercone, and O'Sullivan acted in concert to Plaintiff's detriment with regard to the appellate proceedings to retaliate against Plaintiff.[14] Amended Complaint at 21. In particular, the court transcript Plaintiff obtained for use in connection with the appeal allegedly had been altered to Plaintiff's

---

[14] The motivation for Justice Curran, Cercone and O'Sullivan to retaliate against Plaintiff is neither explained nor alleged by Plaintiff.

detriment.[15]  *Id*.  When O'Sullivan, at Plaintiff's request, spoke with Justice Curran's court reporter regarding the altered transcript, the court reporter, allegedly based on fear of and intimidation by Justice Curran who allegedly participated in making changes to the transcript, refused to correct the transcript.  *Id*. at 21.  Although Plaintiff paid the requisite fees to the Erie County Clerk's Office to obtain exhibits from the matrimonial proceedings, O'Sullivan did not permit Plaintiff to review the exhibits, nor did O'Sullivan advise Plaintiff of the court date for the appeal.  The Appellate Division's decision affirming Justice Curran's decision, rendered May 2, 2008, was based on the altered court transcript and O'Sullivan's arguments that included slanderous material "obtained from the other defendants including Ms. Marcus."  *Id*.

Plaintiff generally alleges all Defendants colluded against Plaintiff in various ways, including, *inter alia*, bribing and influencing government officials to deny Plaintiff unspecified "rights," unauthorized monitoring of Plaintiff's telephone calls, spreading false and malicious rumors, interfering with Plaintiff's attempts to obtain employment, obtaining financial information from Plaintiff's tax returns, using slander and bribes to entice Plaintiff's physicians and therapists to harm Plaintiff, requesting law enforcement officials and criminals to create circumstantial evidence to support false criminal charges against Plaintiff, and conducting a comprehensive background check to discover any past incidents of bad behavior to use against Plaintiff.  Amended Complaint at 22-23.  Plaintiff further alleged Defendants bribed other persons not sued in this action to obtains "sensitive information about the plaintiff's financial and other

---

[15] Plaintiff does not specify the nature of the alleged alterations to the court transcript.

affairs." *Id*. at 23.  In particular, when Plaintiff lived in the Town of Hamburg

("Hamburg"), New York, Hamburg Police Officer Nicholas Borowski ("Borowski"), who is

the son of one Sandra Borowski, an ECC employee in the Grants Accounting

Department, without any warrant, entered and searched Plaintiff's home in Plaintiff's

absence.  *Id*. at 23-24.  When Borowski's search did not turn up anything illegal or

improper, Defendants entered Plaintiff's Hamburg home and installed a computer virus

on Plaintiff's personal computer.  *Id*. at 24.  According to Plaintiff, Defendants retaliated

against Plaintiff's discovery of the computer virus on her personal computer "by creating

false charges."  *Id*.

Defendants also, with Reuter's knowledge and permission, installed so-called

"spyware" on Plaintiff's work computer, and disseminated the information obtained

through the spyware to Marcus and other Defendants.  Amended Complaint at 24.  A

computer virus was also installed on Plaintiff's work computer "designed to download

illegal and unsavory items from the internet without Plaintiff's knowledge," to frame

Plaintiff after Defendants' other efforts to find any evidence of improper behavior had

failed.  *Id*.  Plaintiff claims ECC employee Donna Kokanovich allegedly installed a

hidden camera in Plaintiff's ECC office.  *Id*.

Plaintiff maintains Defendants' actions caused her severe emotional distress and

anxiety, and her unspecified medical condition deteriorated, requiring Plaintiff to take a

one-year unpaid leave from her ECC position.  Amended Complaint at 24.  Defendants,

however, allegedly contacted Plaintiff's treating physicians to interfere with Plaintiff's

treatment.  In particular, Defendants allegedly contacted one Dr. Kull, a

temporomandibular joint disorder specialist from whom Plaintiff attempted to obtain a

mouthpiece, and manipulated Dr. Kull into denying Plaintiff treatment.  *Id*. at 25.

Defendants also allegedly contacted Plaintiff's chiropractor, Dr. Nightingale, to request

"Dr. Nightingale intentionally give the plaintiff a chiropractic induced stroke."  *Id*.  Plaintiff

ceased seeking treatment from Drs. Kull and Nightingale and now cannot obtain

medical treatment from any doctor or therapist without fearing intentional infliction of

physical harm.  *Id*.  Plaintiff further maintains Defendants contacted Plaintiff's

physicians and therapists and installed cameras and recording devices around and

inside Plaintiff's home to verify the medical treatments Plaintiff claimed to be seeking,

and that such invasion of privacy has caused Plaintiff even more emotional distress.  *Id*.

Despite the fact that Defendants' surveillance of Plaintiff's home and contact with

Plaintiff's physicians failed to reveal Plaintiff abused any sick leave, in February 2009,

ECC Director of Human Resources, at the direction of Reuter, filed a charge against

Plaintiff for abuse of sick leave and absence without leave.  Amended Complaint at 25-

26.  ECC also denied Plaintiff's request for leave under the Family and Medical Leave

Act, made at some unspecified date in 2009.  *Id*. at 26.  Plaintiff, at ECC's request,

contacted the Erie County Officer for the Disabled to obtain a physician's request for

reasonable accommodation of Plaintiff's medical condition.[16]  *Id*.  Plaintiff's physician

made three requests to ECC for reasonable accommodation of Plaintiff's physical

condition, all which were denied by the Erie County Office for the Disabled in violation

of the Americans with Disabilities Act ("ADA").  *Id*.  ECC nevertheless used the

reasonable accommodation requests to create a work environment the opposite of that

---

[16] Plaintiff specifies neither the medical condition nor the reasonable accommodation sought.

which had been requested upon Plaintiff's returning to work at ECC in July 2009.  *Id*.

Plaintiff alleges that ECC attempted to prevent Plaintiff from returning to work full time in July 2009, attempted to deny Plaintiff health benefits, and tried to force Plaintiff to apply for Social Security Disability Benefits, despite also planning to accuse Plaintiff of Social Security fraud if Plaintiff successfully applied for and was granted such benefits.  Amended Complaint at 26.  Plaintiff was also required to provide medical documentation for every use of sick leave.  *Id*.  Plaintiff maintains Defendants requested changes to Plaintiff's medical records and that Plaintiff's physician's deny the legitimacy of any medical documentation Plaintiff submitted to ECC as proof of Plaintiff's medical appointments.  *Id*.

After Defendants allegedly attempted to add "harmful substances to the plaintiff's food," Plaintiff brought her concerns regarding her physical safety to ECC President Quinn who referred the matter to ECC Director of Equity and Diversity Darley Willis ("Willis").  Amended Complaint at 27.  Willis, however, was unable to provide any assurance of safety to Plaintiff.  *Id*.

Plaintiff, in her internal auditor capacity at ECC, was assigned to investigate a matter concerning alleged fraud by an ECC professor who submitted false receipts to ECC for rental of a steno machine, and the matter was eventually turned over to the Erie County District Attorney's Office.  Amended Complaint at 27.  Plaintiff maintains the assignment to the case for Plaintiff to work on was intended to warn Plaintiff not to submit fraudulent medical documentation in support of Plaintiff's sick leave taken for medical appointments.  *Id*.  Plaintiff maintains such fear of false accusations has also caused Plaintiff not to submit claims for reimbursement of the amounts withheld from

Plaintiff's pay for child care expenses, thereby interfering with Plaintiff's ability to obtain child care for her son and intentionally jeopardizing Plaintiff's employment at ECC.  *Id*.

Although prior to commencing her one-year unpaid leave from her Internal Auditor position at ECC Plaintiff had been permitted to work a flexible schedule ("flex-time") to accommodate her disability, after returning to work in July 2009, Plaintiff was informed by one Mr. Schott ("Schott"), that flex-time was not longer permitted and Plaintiff was required to work a fixed schedule from 9:00 A.M. to 5:00 P.M.  Amended Complaint at 26.  Plaintiff maintains the denial of flex time was intended to retaliate against Plaintiff for filing a complaint with Willis and was a violation of the ADA.  *Id*. at 28.  In a memorandum to Schott dated January 28, 2010, Plaintiff advised that her review of the AAECC's Collective Bargaining Agreement revealed nothing prohibiting union EEC employees from working flex-time.  *Id*. at 26-28.

On March 17, 2010, Plaintiff filed a grievance regarding the flex-time issue with AAECC South Campus Grievance Representative Patrick Ryan ("Ryan"), providing Ryan with copies of the flex-time memoranda exchanged between Schott and Plaintiff. After Ryan advised Plaintiff the matter was not subject to the union's grievance procedures Plaintiff, on March 18, 2010, filed two grievances with ECC President Quinn.  Amended Complaint at 28-29.  In an e-mail sent March 19, 2010, Willis told Plaintiff to perform her job during the 8:00 A.M. to 4:00 P.M. schedule to which Plaintiff had been assigned.  *Id*.

Plaintiff further maintains Defendants made slanderous statements about Plaintiff to the teachers of Plaintiff's son to influence the teachers regarding Plaintiff's son.  Amended Complaint at 29.  According to Plaintiffs, despite her son's

developmental delays requiring significant special education, speech, occupational

therapy, and other services, and Plaintiff's son's birthday falling late in the year, Plaintiff

was pressured to enroll her son in kindergarten at age four, or all special education

services would be discontinued.  *Id*. at 29-30.  Plaintiff's son did not do well in

kindergarten, requiring her son to repeat the program.  *Id*. at 30.

Plaintiff alleges that although Defendant Singh used to physically abuse her son

during court-ordered visitation, Plaintiff was led to believe by O'Sullivan and Justice

Curran that if Plaintiff did not permit Defendant Singh to see his son, all child support

payments from Defendant Singh to Plaintiff would be discontinued.  Plaintiff maintains

that when Defendant Singh, who now lives in Ohio, would pick up their son for

visitation, Defendant Singh often brought their son to "dirty hotels" and "would return

from his visits with red swollen painful bug bites all over his body."  Amended Complaint

at 30.  Plaintiff's repeated efforts to bring these matters regarding her son's court-

ordered visitations with his father to O'Sullivan's attention were met with indifference.

*Id*.

Finally, Plaintiff makes a general allegation that although she lived in her parents'

home after divorcing Defendant Singh, "[t]he home of the plaintiff's parents was turned

into an unhealthy environment for the plaintiff and her son and the plaintiff had to find a

new place to live."[17]  Amended Complaint at 30.  Plaintiff, however, maintains

Defendants have used information obtained through their illegal monitoring of Plaintiff to

"sabotage" Plaintiff's efforts to rent a home for herself and her son, such that Plaintiff

---

[17] The precise dates Plaintiff and her son lived in Plaintiff's parents' home are not found in the record.

has been forced to live in places that she otherwise would not have chosen, and that

Defendants then spread rumors that Plaintiff does not keep a clean home.  *Id*.

## DISCUSSION

**1.     Motions to Dismiss**

Motions to dismiss the Amended Complaint have been filed by Defendants

Marcus, Brisbane Consulting and Cercone, Bogdan, the IRS, and Defendant Singh.  On

a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the

complaint and is required to accept the plaintiff's allegations as true and to construe

those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is

required to liberally construe the complaint, accept as true all factual allegations in the

complaint, and draw all reasonable inferences in the plaintiff's favor).  Two recent

Supreme Court cases require application of "a 'plausibility standard,' which is guided by

'[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, __ U.S.

__, 129 S.Ct. 1937, 1949 (2009)).  "First, although 'a court must accept as true all of the

allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,'

and '[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct.

at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the review court to draw on its

judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).

Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint.

*Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting

*Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be enough

to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.  The court addresses

the merits of the motions to dismiss with regard to each moving Defendant, and

recommends dismissing all claims newly asserted in the Amended Complaint with the

exception of the FMLA and ADA claims asserted against the County Defendants, such

that the action will continue with regard to just those claims, as well as the claims

asserted in the original complaint, as realleged in the Amended Complaint, against

NYSDOTF.[18]


A.      **Conspiracy Claims**

Plaintiff has alleged Defendants have engaged in a continuing conspiracy of

retaliation against Plaintiff for filing the employment discrimination charge with the

EEOC regarding Plaintiff's employment at NYSDOTF.  Amended Complaint, *passim*.

Bogdan and Brisbane Defendants seek dismissal of the conspiracy claims for failure to

---

[18] The original complaint is incorporated by reference into the Amended Complaint.  Amended Complaint at 11.

state claim.  Brown Affidavit ¶¶ 29-32[19]; Brown Reply Affidavit ¶¶ 19-37; Brisbane Defendants' Memorandum at 13-16.  Although Plaintiff's conspiracy claims are asserted against all "Defendants" without differentiation or further specificity, Marcus, O'Sullivan, ECC, Erie County, Reuter, IRS, Stolzenburg, and Singh have not sought dismissal of the conspiracy claims.  Nevertheless, on this record, the conspiracy claims should be dismissed as against all Defendants.

Insofar as Plaintiff alleges undifferentiated Defendants conspired to commit torts against her, New York does not recognized a common law action for conspiring to commit a tort.  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("New York does not recognize an independent tort of conspiracy.") (citing *Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 102-03 (N.Y. 1986) ("a mere conspiracy to commit a tort is never of itself a cause of action." (internal quotation marks and citation omitted; alterations incorporated))).  Rather, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."  *Alexander & Alexander*, 503 N.E.2d at 103.  Because no cause of action exists under New York law for conspiracy, such claims, to the extent alleged, should be dismissed for failing to state a claim.  Such allegations, however, may remain to provide a factual basis for admission of relevant evidence to the extent permitted by New York law.  *Alexander & Alexander*, 503 N.E.2d at 103 (citing *Brackett v. Griswold*, 20 N.E. 376, 380-81 (N.Y. 1889).

With regard to Plaintiff's claims that undifferentiated Defendants conspired to

---

[19] The court notes the Brown Affidavit designates two different paragraphs as "32."

interfere with or deprive Plaintiff of various civil rights, Plaintiff references as the legal basis for such claim 18 U.S.C. § 241 ("§ 241"), which criminalizes conspiring by two or more persons to interfere with or deprive any person of their civil rights.  Plaintiff, however, as a private citizen, is without any standing to criminally prosecute Defendants under 18 U.S.C. § 241.  *See Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) ("a private citizen lacks the judicially cognizable interest in the prosecution or nonprosecution of another" and holding inmates lacked standing to force issuance of arrest warrants of corrections officers for beatings); *Esposito v. New York*, 355 Fed.Appx. 511 (2d Cir. 2009) (affirming district court's dismissal of plaintiff's § 1983 civil rights claims based on defendant's failure to arrest and criminally prosecute another defendant because "'a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.'" (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))).  Nor is § 241 recognized as a legal predicate for a civil action for damages.  *Sheehy v.  Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (criminal statutes, including 18 U.S.C. § 242, do not provide for private causes of action)).  Accordingly, all of Plaintiff's assertions of a criminal conspiracy under § 241 should be dismissed for failure to state a claim.

Although not specified by Plaintiff, given Plaintiff's *pro se* status, the court liberally construes the Amended Complaint, pursuant to *Haines v. Kerner*,  404 U.S. 519, 520 (1972) (allegations of *pro se* complaint are held to less stringent standards than formal pleadings drafted by attorneys), as asserting Defendants conspired to deprive Plaintiff of her constitutional and civil rights under 42 U.S.C. § 1985(3) ("§

1985(3)"), which proscribes a conspiracy to deprive a person of any rights or privileges under the laws of the United States.[20]  The Amended Complaint nevertheless also fails to sufficiently plead a cause of action for conspiring to violate Plaintiff's constitutional or other civil rights under§ 1985(3), the elements of which include "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citing *United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983)).  "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based invidious discriminatory animus behind the conspirators' action.'" *Id.*

"Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal quotation omitted).  *See also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").  "Broad allegations of conspiracy are insufficient; the plaintiff 'must provide

---

[20] Section 1985(1) renders it unlawful to conspire to prevent an officer from performing duties, whereas § 1985(2) renders it unlawful to conspire to obstruct justice, or to intimidate a party, juror, or witness.

some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (addressing conspiracy claims under 42 U.S.C. § 1985). Here, the Amended Complaint is completely devoid of any allegation of fact which plausibly suggests a meeting of the minds or agreement between any of the Defendants as required to establish the first element of a civil rights conspiracy claim.

Moreover, Plaintiff has failed to allege the conspiracy was motivated by any racial or other class-based invidious discriminatory animus as required, *Mian*, 7 F.3d at 1087, asserting instead that Defendants waged a campaign of conspiracy against Plaintiff to retaliate against Plaintiff for filing her EEOC employment discrimination charge complaining of discrimination at NYSDOTF. Plaintiff's Memorandum at 10. As such, Plaintiff has failed to sufficiently allege a civil rights conspiracy claim.

Finally, although Defendants Marcus, O'Sullivan, ECC, Erie County, Reuter, IRS, Stolzenburg, and Singh have not sought dismissal of the conspiracy claims, a district court has the inherent authority to *sua sponte* dismiss an action as frivolous, regardless of whether the plaintiff has been granted leave to proceed *in forma pauperis*. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (dismissing, *sua sponte*, complaint filed by *pro se* plaintiff who had paid filing fee where, given the frivolous nature of complaint, dismissal would have been mandatory under 28 U.S.C. § 1915(e)(2) had plaintiff sought to proceed *in forma pauperis*). Here, given the complete lack of viability to Plaintiff's conspiracy claims, dismissal for failing to state a claim of such claims against all Defendants, including those who have not moved, should be

GRANTED.

### B.      Marcus

State Defendants move to dismiss the Title VII claims against Marcus on the

basis that individual supervisory employees are not proper defendants to Title VII

claims which may be asserted only against the employer, State Defendants'

Memorandum at 5-6, and that no claims against Marcus, whom Plaintiff did not name in

the original complaint, relate back to the filing of the original complaint and, as such, are

time-barred.  *Id*. at 6-8.[21]   In opposition, Plaintiff clarifies that she is not asserting any

Title VII claims against Marcus but, rather, alleges Marcus conspired with other

unspecified Defendants to retaliate against Plaintiff for filing her EEOC employment

discrimination charge.  Plaintiff's Memorandum at 10.  Plaintiff further maintains that the

statute of limitations is not a proper basis of a Rule 12(b)(6) motion to dismiss unless

the alleged claims are subject to a heightened pleading standard.  *Id*.  In further support

of the motion to dismiss, State Defendants assert that Plaintiff's Memorandum fails to

address the State Defendants' Motion, urging the court to grant as unopposed State

Defendants' motion.  State Defendants' Reply at 2-3.  On this record, Plaintiff's federal

employment discrimination claims should be dismissed against Marcus because such

claims can be maintained only against employers, the state law claims should be

dismissed as time-barred because they do not relate back to the filing of the original

---

[21] The State Defendants do not seek dismissal of the Amended Complaint as against Defendant NYSDOTF.  Further, State Defendants' alternative request to sever the claims that are unrelated to the claims against State Defendants and for a more definite statement are discussed, *infra*, at        .

complaint, and the conspiracy claims should be dismissed for failure to state a claim.

Here, the record is devoid of any indication that Plaintiff, while employed by NYSDOTF was supervised by Marcus, worked in the same department as Marcus, or ever had any contact with Marcus.  Further, all allegations regarding Marcus pertain to a period of time after Plaintiff's employment with NYSDOTF had ended and Plaintiff had commenced working for ECC.  It is settled that Title VII claims may only be brought against the employer entity, and not individual defendants.  *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (observing Title VII's remedial provisions do not provide for individual liability (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.  1995) ("the statutory scheme and remedial provisions of Title VII indicate that Congress intended to limit liability to employer-entities with fifteen or more employees."), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).  As such, insofar as State Defendants seek to dismiss any Title VII claims Plaintiff asserts against Marcus, the motion should be GRANTED.

Plaintiff's state law claims against Marcus must be dismissed as time-barred under the three-year statute of limitations applicable to Title VII and civil rights claims under 42 U.S.C. §§ 1981 and 1983, *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, (2d Cir.  2004) (statute of limitations applicable to claim brought under §§ 1981 and 1983 in New York is three years); *Harris v. City of New York*, 186 F.3d 243, 249-250 (2d Cir. 1999) (three-year statute of limitations applicable to Title VII employment discrimination claims), as well as under the one-year limitations period applicable to New York common law intentional torts of libel, slander, false words, deprivation of

property, and violation of privacy.  N.Y. Civ.Prac.L.&R. § 214[5] (McKinney's 2003) ("§

214[5]").  In particular, the original complaint is devoid of any mention of Marcus.

Plaintiff, however, argues in opposition to State Defendants' Motion that the expiration

of the relevant statute of limitations is an improper basis for dismissal for failure to state

a claim.  Plaintiff's Memorandum at 11.  Alternatively, Plaintiff maintains that because

Marcus is being joined under Rules 19 and 20, the claims against Marcus relate back to

the filing of the original complaint and, thus, are timely.  *Id*.  State Defendants have not

replied to Plaintiff's response.

Initially, the court observes that, contrary to Plaintiff's assertion, an affirmative

defense may be presented on a Rule 12(b)(6) motion to dismiss provided the facts

supporting the defense appear on the face of the complaint.  *See McKenna v.  Wright*,

386 F.3d 432, 436 (2d Cir. 2004) (citing, *inter alia*, *Ghartey v. St. John's Queens*

*Hospital*, 869 F.2d 160, 162 (2d Cir. 1989) (holding "[w]here the dates in a complaint

show that an action is barred by a statute of limitations, a defendant may raise the

affirmative defense in a pre-answer motion to dismiss.  Such a motion is properly

treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief

can be granted. . . .")).  Dismissal for failure to state a claim based on a statute of

limitations is appropriate only if a complaint clearly shows that the claim is time-barred.

*Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  Here, not only do the

dates contained in the Amended Complaint establish that Plaintiff's claims, if any,

against Marcus accrued in 2004, more than three years prior to the filing of the

Amended Complaint, but Plaintiff has failed to sufficiently allege an on-going conspiracy

to bring any of the alleged discriminatory acts within the applicable limitations period to

establish a continuing violation which may not be time-barred.  *See Harris*, 186 F.3d at

250 (plaintiff must allege both the existence of an ongoing policy of discrimination and

some non-time-barred acts taken in furtherance of the discriminatory policy to plead

continuing violation).

Further, there is no basis on which to find the claims Plaintiff asserts against

Marcus in the Amended Complaint relate back to the original complaint so as to gain

the advantage of the date of the filing of the original complaint to render the newly

asserted claims timely.  As relevant, Fed.R.Civ.P. 15 provides

> An amendment to a pleading relates to the date of the original pleading when:
>
> * * *
>
> (B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the party's identity.

Fed.R.Civ.P. 15(c)(1).

In the instant case, that the claims Plaintiff asserts against Marcus do not arise out of

any conduct, transaction, or occurrence set forth in the original pleading is evident by

the fact that the allegations in the original complaint end with Plaintiff's resignation from

her position with NYSDOTF on December 23, 2003, Complaint ¶ 8, whereas Plaintiff's

earliest allegation regarding Marcus concerns Plaintiff being introduced to Abbas "at the

home of Ms. Constance Marcus during a social gathering in the year 2004."  Amended

Complaint at 12.  Although Plaintiff makes vague, conclusory assertions that Marcus conspired with other, undifferentiated Defendants, to discriminate and engage in hostile actions against Plaintiff to retaliate against Plaintiff for complaining about the alleged discriminatory treatment she encountered while employed at NYSDOTF, not only has Plaintiff failed to sufficiently allege any meeting of the minds or agreement between Marcus and any other Defendant so as to state a claim for conspiracy, Discussion, *supra*, at 35-37, but, given that Marcus never supervised nor worked with Plaintiff at NYSDOTF, such conspiracy would necessarily have had to ensue after Plaintiff left NYSDOTF's employ, such that it is not plausible that Marcus should have known that, but for a mistake in identity, Plaintiff had intended to assert such claims against Marcus. Rather, Marcus's first inkling that Plaintiff intended to pursue any legal action against Marcus could not have occurred prior to October 25, 2010 when Plaintiff filed the Amended Complaint naming Marcus as a Defendant.  On this record, the claims asserted against Marcus in the Amended Complaint cannot relate back to the date of the filing of the original complaint and, as such, should be dismissed as time-barred.

Nor does Plaintiff's assertion, Plaintiff's Memorandum at 11, that Marcus conspired with other, undifferentiated Defendants, and that such conspiracy was on-going when the Amended Complaint was filed require a different result.  As discussed, *supra*, Plaintiff's vague and conclusory assertions of conspiracy fail to state a claim for conspiracy.  Discussion, *supra*, at 36-37.  Here, in the absence of any allegation plausibly suggesting an agreement between Marcus and any other Defendant which, if true, would establish a conspiracy to violate any of Plaintiff's rights, there is no factual basis in the Amended Complaint to support a finding of a continuing violation that could

42

otherwise make the claims asserted against Marcus timely.

Plaintiff also asserts numerous state law claims that are subject to this court's supplemental jurisdiction, 28 U.S.C. § 1367(a), only insofar as they are woven into the fact pattern by the insufficient conspiracy claim.  Assuming for the sake of this discussion that the District Judge agrees that the federal claims should be dismissed as against Defendant Marcus, and that Plaintiff has failed to plead sufficient facts to allege a conspiracy such that all claims against Marcus must be dismissed, then the state law claims should be dismissed for lack of subject matter jurisdiction.

Significantly, "[u]nder 28 U.S.C. § 1367(a), a district court has 'supplemental jurisdiction' over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy' once original jurisdiction is established."  *Cicio v. Does*, 321 F.3d 83, 97 (2d Cir.  2003) (quoting 28 U.S.C. § 1367(a)), *vacated on other grounds by* 542 U.S. 933 (2004).  "A state law claim forms part of the same controversy if it, and the federal claim 'derive from a common nucleus of operative fact.'"  *Id*.  (quoting *City of Chicago v.  International College of Surgeons*, 522 U.S. 156, 165 (1997)).

Except for the alleged conspiracy, Plaintiff's state law claims are otherwise unrelated to the federal causes of action and, thus, the court is without supplemental jurisdiction over them pursuant to § 1367(a) because the dismissal of the insufficiently pleaded conspiracy renders such claims against Marcus completely unrelated to the Title VII claims against NYSDOTF and the FMLA and ADA claims against the County Defendants.

###### D.      Defendants Brisbane Consulting and Cercone

The Brisbane Defendants move to dismiss the claims against them on the basis that such claims (1) are barred by *res judicata*, Brisbane Defendants' Memorandum at 7-10; (2) barred by judicial immunity, *id.* at 10-11; (3) are time-barred, *id.* at 12-13; (4) insofar as Plaintiff alleges a conspiracy between Cercone and Justice Curran involving a 2009 matrimonial action, such allegations fail to state a claim, *id.* at 13-16; and (5) there is no basis for federal jurisdiction with regard to the state law claims, *id.* at 16-17. In opposition, Plaintiff argues (1) her claims against Brisbane Defendants are not barred by *res judicata* because they arose after the relevant state court decision, Plaintiff's Memorandum at 1-4; (2) such claims are based on conduct so egregious as to be outside Justice Curran's judicial capacity such that even judicial immunity does not bar legal action on them, *id.*; (3) the claims are timely under the doctrine of relation back, *id.* at 4; (4) there is no proof that Cercone ever withdrew from the alleged conspiracy with Justice Curran, *id.* at 2; (5) contrary to Brisbane Defendants, Plaintiff's allegations state valid claims and are not delusional, *id.* at 4-9; and (6) Plaintiff's state claims are subject to pendent jurisdiction in this court based on the Brisbane Defendants' participation in the conspiracy with other Defendants, *id.* at 9.  In further support of dismissal, Brisbane Defendants maintain the alleged misconduct of which Plaintiff complains is identical to that raised in the state court action, Brisbane Defendants' Reply at 3-4; Plaintiff's claims, even with consideration given to additional allegations set forth in Plaintiff's opposing papers, fail to state a plausible claim, *id.* at 4-8; and Plaintiff's claims should be dismissed on the basis that they are "delusional," *id.*

at 8-10.

With regard to Brisbane Defendants' assertion that Plaintiff's claim are barred by the doctrine of *res judicata*, pursuant to 28 U.S.C. § 1738, the full faith and credit statute, all judicial proceedings of any court of any state within the United States "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Federal courts must "give a prior state court decision the same preclusive effect that the courts of that state would give to it." *Colon v. Coughlin*, 58 F.3d 865, 869 n. 2 (2d Cir. 1995) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982) (citing 28 U.S.C. § 1738)). The full faith and credit statute applies in actions before the court based on federal question jurisdiction. *See Niagara Mohawk Power Corporation v. Federal Energy Regulatory Commission*, 162 F.Supp.2d 107, 140 & n. 48 (N.D.N.Y. 2001) (according full faith and credit to state judicial determination in subsequent federal action alleging violation of federal law), *aff'd*, 306 F.3d 1264 (2d Cir.  2002). "To accord full faith and credit to a given state-court judgment, the court must at least apply that state's principles of *res judicata* and collateral estoppel." *Town of Deerfield v. FCC*, 992 F.2d 420, 429 (2d Cir. 1993). New York law provides that *res judicata* precludes a claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (*citing Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)).

Brisbane Defendants predicate their argument that Plaintiff's claim are barred by

the doctrine of *res judicata* on a decision issued by New York State Supreme Court

Justice Patrick H. NeMoyer ("Justice NeMoyer") in connection with an earlier *pro se*

action Plaintiff commenced in New York Supreme Court, Erie County, on May 1, 2009,

asserting against Brisbane Defendants claims for professional negligence, intentional

infliction of emotional distress, breach of fiduciary duty, and conspiring with Justice

Curran to poison Plaintiff, all arising out of Plaintiff's matrimonial action.  In a Decision

and Order filed February 5, 2010 ("February 5, 2010 D&O),[22] Justice NeMoyer

dismissed all claims, stating Plaintiff had made "outrageous assertions" including that,

in connection with Plaintiff's matrimonial action before Justice Curran, Brisbane

Defendants conspired with Justice Curran, and Plaintiff's former matrimonial attorney,

and "committed bribery, illegal monitored plaintiff's phone calls and travel, falsified the

transcript of the divorce hearing, burglarized plaintiff's residence, exposed plaintiff's

child to a pedophile, and poisoned plaintiff's food."  February 5, 2010 D&O at 4, n. 2.

These assertions are essentially identical to those Plaintiff alleges in the instant case

against the same Brisbane Defendants.

Insofar as Plaintiff maintains that her claims are not barred by *res judicata*

because such claims are based on acts occurring after the February 5, 2010 D&O, and

are part of a continuing criminal conspiracy in violation of 18 U.S.C. § 371 ("§ 371"),

Plaintiff is incorrect.  First, assuming, *arguendo*, Brisbane Defendants have, as Plaintiff

alleges, engaged in a criminal conspiracy against Plaintiff stemming from Plaintiff's

matrimonial action in state court, such alleged acts in furtherance of the conspiracy

---

[22] Brisbane Defendants' Exh. I.

necessarily would arise from the same core of operative facts on which Justice

NeMoyer dismissed Plaintiff's state court action in the February 5, 2010 D&O.  As such,

these more recently alleged acts are subject to *res judicata*.  *See Norman v. Niagara*

*Mohawk Power Corp.*, 873 F.2d 634, 638 (2d Cir. 1989) (holding dismissal of

employees' civil rights action against employer was *res judicata* for subsequent RICO

claims not alleged in earlier action, yet arising out of same core of operative facts,

despite assertion of "new legal theories").  Moreover, as Plaintiff's appeal to the

Appellate Division, Fourth Department of Justice NeMoyer's February 5, 2010 D&O was

dismissed on July 29, 2010 for failing to perfect the appeal, the February 5, 2010 D&O

is a final decision on the merits, entitled to preclusive effect in this court.  *Pike*, 266 F.3d

at 91.

　　　With regard to Plaintiff's assertions that Brisbane Defendants' actions form a

criminal conspiracy under 18 U.S.C. § 371 ("§ 371"), § 371 criminalizes a conspiracy to

commit any offense against or to defraud the United States, but, by its terms, does not

provide for a private, civil cause of action to be brought by a private citizen for a

conspiracy against such citizen.  *D'Amato v. Rattoballi*, 83 Fed.Appx. 359 (2d Cir.

2003) (§ 371 setting forth offense of conspiracy to commit offense against or to defraud

United States does not provide for civil remedy); *Ng v. HSBC Mortgage Corp.*, 2010 WL

889256, at * 10 (E.D.N.Y. Mar. 20, 2010) (citing *Rapoport v. Republic of Mexico*, 619

F.Supp. 1476, 1480 (D.D.C. 1985), and *Lamont v. Haig*, 539 F.Supp. 552, 558 (D.S.D.

1982)).  Moreover, as discussed, *supra*, at 35, Plaintiff, as a private citizen, is without

any standing to criminally prosecute Defendants under 18 U.S.C. § 241 for conspiring

to interfere with or deprive Plaintiff of her civil rights.  Accordingly, all of Plaintiff's

assertions of a criminal conspiracy under §§ 371 and 241, including that the claims against Brisbane Defendants are not time-barred because they relate back to the matrimonial action, that there is no proof Cercone ever withdrew from the alleged conspiracy, and that Justice Curran's[23] behavior with regard to the conspiracy was so egregious as to be outside the protection of judicial immunity, must also be dismissed for lack of standing.

Because the original complaint is devoid of any mention of Brisbane Defendants, insofar as Plaintiff asserts federal civil rights and New York common law claims based on Plaintiff's matrimonial proceedings, for which the judgment of divorce was entered by Justice Curran on November 29, 2006, and which are subject either to a one or three-year statute of limitation, there is no basis on which such claims can relate back. Discussion, *supra*, at 39-42. Accordingly, Plaintiff's federal civil rights and New York common law claims against Brisbane Defendants should be dismissed as untimely.

Further, insofar as the Amended Complaint can be construed as alleging such claim against Brisbane Defendants, the absence of a sufficiently pleaded conspiracy requires the dismissal of Plaintiff's conspiracy claims. Discussion, *supra*, at 34-37. Finally, absent a sufficiently pleaded conspiracy claim, the remaining New York common law claims, to the extent asserted against Brisbane Defendants, do not derive from any common nucleus of operative facts and are unrelated to the federal claims such that the court should refrain from exercising § 1367(a) supplemental jurisdiction over such claims. *Cicio*, 321 F.3d at 97. Discussion, *supra*, at 43.

---

[23] The court notes that Plaintiff has not named Justice Curran as a defendant to this action.

To summarize, all claims against Brisbane Defendants should be dismissed under the doctrine of *res judicata*, the relevant statute of limitations, for failing to state a claim, or for lack of supplemental jurisdiction.

### E.    Defendant Bogdan

Bogdan moves to dismiss the Amended Complaint on the basis that Plaintiff's undifferentiated claims fail to state any claim against her, Brown Affidavit ¶¶ 8-32, that all claims against Bogdan are time-barred, *id.* ¶¶ 33-54, and are so frivolous and unsubstantiated as to warrant awarding, pursuant to Fed.R.Civ.P. 11 ("Rule 11") Bogdan sanctions including attorneys' fees and costs, *id.* ¶¶ 55-64.  In opposition, Plaintiff maintains Bogdan participated in a conspiracy against Plaintiff in violation of § 371, for which, as a continuing offense, the statute of limitations has yet to accrue, and from which Bogdan has never withdrawn.  Plaintiff's Motion at 9-10.

In further support of dismissal, Bogdan asserts that nowhere within Plaintiff's papers filed in support of Plaintiff's motion to file a second amended complaint or in opposition to the various motions to dismiss has Plaintiff identified which of Plaintiff's several claims for relief are directed toward Bogdan, but concedes Plaintiff's FMLA and ADA claims are asserted only against County Defendants.  Brown Reply Affidavit ¶¶ 11-12.  Bogdan maintains that even if Plaintiff could state a valid cause of action against Bogdan for allegedly spreading "malicious" and "false" rumors about Plaintiff in the years 2000 to 2001, the applicable statutes of limitations for such claims have expired. *Id*. ¶ 18.  Further, Bogdan argues that Plaintiff has confused civil conspiracy with criminal conspiracy, and had failed to allege a proper factual basis supporting a civil

49

conspiracy claim. *Id*. ¶¶ 19-40.

As discussed, Discussion, *supra*, at 47-48, § 371 criminalizes a conspiracy to commit any offense against or to defraud the United States, but does not provide for a private, civil cause of action to be brought by a private citizen for a conspiracy against such citizen.  Liberally construing Plaintiff's claims sounding in common law slander and defamation, such claims, as intentional torts, are subject to a one-year statute of limitations.  N.Y. Civ.Prac.L&R § 214[5] (McKinney's 2003).  Given that Plaintiff alleges Bogdan made the offending statements in 2000 and 2001, such claims are time-barred even assuming, *arguendo*, that such claims relate back to the filing of the original complaint on May 9, 2006.  Furthermore, because the original complaint is devoid of any mention of Bogdan, there is no basis on which the claims could relate back to the original complaint.  *See* Discussion, *supra*, at 39-42.

Moreover, insofar as Plaintiff attempts to assert a federal conspiracy claim against Bogdan, as discussed, Discussion, *supra*, at 34-37, such claim is insufficiently pleaded, requiring dismissal of the federal conspiracy claim, thereby destroying the basis for supplemental jurisdiction over any New York common law claims alleged against Bogdan.

With regard to Bogdan's request for an award of sanctions pursuant to Rule 11, Brown Affidavit ¶¶ 55-64, a district court may, in its discretion, impose sanctions "against a litigant who submits a pleading 'to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'"  *Ginther v.  provident Life and Casualty Ins. Co.*, 350 Fed.Appx.  494, 496 (2d Cir.  2009) (quoting Fed.R.Civ.P. 11(b)(1)).  A party's *pro se* status does not insulate the party from Rule 11 sanctions.  *Id*.  Nevertheless, a

motion for Rule 11 sanctions must be made independently from other motions, and contains a "safe harbor" provision requiring the sanctions motion be served on the allegedly offending party 21 days before it is filed with the court.  Fed.R.Civ.P. 11(c)(2).  Furthermore, failure to comply with Rule 11's safe harbor provision will result in denial of the sanctions motion.  *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995) (reversing imposition of Rule 11 sanctions for failure to comply with Rule 11(c)(2) requirements).

Here, there is no indication in Bogdan's papers that the sanctions motion was separately made, or otherwise complied with Rule 11's safe harbor provision.  As such, Bogdan's request for Rule 11 sanctions should be DENIED.

Accordingly, Bogdan's motion to dismiss Plaintiff's claims against Bogdan should be GRANTED in part and DENIED in part.

## F.    Defendant IRS

Defendant IRS moves to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because Plaintiff never exhausted administrative remedies with regard to her claims against the IRS, as well as Rule 12(b)(6) for failure to state a claim upon which relief may be granted because Plaintiff never applied for employment with the IRS.  IRS Memorandum at 1.  Plaintiff maintains that she was not required to exhaust administrative remedies with regard to the IRS and that the second amended complaint Plaintiff seeks to file contains factual allegations establishing her claim against the IRS.  Plaintiff's Response Memorandum at 5.  In further opposition to Plaintiff's request to file a Second Amended Complaint,

IRS argues that the new allegations Plaintiff seeks to add in a further amended complaint are insufficient to state any claim against the IRS and thus are futile.

The IRS argues that, pursuant to Fed.R.Civ.P. 12(b)(1), insofar as the Amended Complaint can be construed as asserting Title VII, ADA, and FMLA claims against the IRS, such claims must be dismissed with prejudice for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust administrative remedies relative to such claims. IRS Memorandum at 7-8.  Plaintiff argues in opposition that her claims against the IRS are not related to any employment or attempt to obtain employment with the IRS but, rather, are limited to the alleged dissemination by the IRS of Plaintiff's sensitive financial information to unidentified third parties and, as such, no exhaustion of administrative remedies was required.  Plaintiff's Response Memorandum at 5.  In further support of dismiss, IRS asserts that insofar as the Amended Complaint can be construed as alleging Title VII, ADA and FMLA claims, the claims were not administratively exhausted such that the court is without jurisdiction over them.  IRS Reply at 2.

With regard to Plaintiff's Title VII claim and IRS's contention that Plaintiff was required to exhaust administrative remedies prior to commencing legal action, the Second Circuit has held that exhaustion of administrative remedies is not a jurisdictional prerequisite, but rather is a precondition to a Title VII action, and may be waived by the parties or the court.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (holding exhaustion of administrative remedies is a precondition to Title VII action and citing *Francis v. City of New York*, 235 F.3d 763, 768-69 (2d Cir. 2003) (holding defendants waived precondition of presentation of Title VII claim to EEOC by failing to

raise defense earlier in litigation)).  *See Jones v. Bock*, 549 U.S. 199, 212 (2007)

(holding prison inmate's failure to exhaust administrative remedies, contrary to Prison

Litigation Reform Act's exhaustion requirement, is affirmative defense rather than

jurisdictional prerequisite).  Here, the IRS, by moving to dismiss the Amended

Complaint for failing to exhaust administrative remedies, has timely asserted, and thus

not waived, this affirmative defense under Title VII.

As to Plaintiff's ADA claim against the IRS, the Second Circuit has held the

exhaustion of administrative remedies is a prerequisite to a civil action in federal court

on a claim under the ADA and thus a jurisdictional prerequisite.  *Polera v. Board of*

*Education of Newburgh Enlarged City School District*, 288 F.3d 478, 480 (2d Cir. 2002)

(holding district court lacked subject matter jurisdiction over the plaintiff's ADA claims

because she failed to exhaust her administrative remedies).  Similarly, in the instant

case, Plaintiff's failure to exhaust administrative remedies with regard to any ADA claim

asserted against the IRS renders the court without jurisdiction over such claim.

Although the FMLA does not require that a plaintiff first exhaust administrative

remedies prior to filing a legal action, such right of action is limited to employees.  29

U.S.C. § 2617(a)(2) (providing civil action to recover damages or equitable relief against

any employer may be maintained by or on behalf of, *inter alia*, "the employees"); *see*

*Breedlove v. Cabou*, 296 F.Supp.2d 253, 276 (N.D.N.Y. 2003) (dismissing affirmative

defense of failure to exhaust administrative remedies with regard to FMLA claim

because the FMLA contains no administrative prerequisite to filing claim).  As such,

because Plaintiff was never an IRS employee, she can maintain no FMLA claim against

the IRS.

Accordingly, the IRS's motion to dismiss for lack of subject matter jurisdiction should be DENIED as to the Title VII and FMLA claims, but should be GRANTED as to the ADA claims.  Nevertheless, all of Plaintiff's claims against IRS should be dismissed under Rule 12(b)(6) for failure to state a claim.

In particular, employment discrimination claims brought under either Title VII or the ADA, by their terms, only may be asserted against an employer or prospective employer.  *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."); 42 U.S.C. § 12111(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").  Further, as stated, Discussion, *supra*, at 52-53, the FMLA applies only to employees.  Accordingly, because Plaintiff does not allege that she ever worked for, applied to work for, or otherwise sought employment with the IRS, Plaintiff cannot assert any plausible cause of action for employment discrimination against the IRS, and Plaintiff's employment discrimination claims arising under federal statutes should be dismissed for failing to state a claim.

Plaintiff, however, maintains that she is seeking leave to assert, as a taxpayer, a retaliation claim against IRS, arguing that after Plaintiff requested Cercone modify certain numbers in the enhanced earnings capacity valuation report prepared in

connection with Plaintiff's divorce from Defendant Singh, the IRS retaliated by allowing unauthorized inspections and disclosing confidential income tax return information in violation of 26 U.S.C. § 7431 ("§ 7431").  Plaintiff's Response Memorandum at 5. Relevant to the instant case, § 7431 grants taxpayers a civil cause of action for damages against the United States for willful or negligent inspections or disclosures of confidential tax returns or return information as defined under 26 U.S.C. § 6103 (§ 6103").  The elements of a cause of action for willful or negligent inspection or disclosure of a taxpayer's tax return or return information under § 7431 include (1) unauthorized disclosure; (2) made either negligent or with knowledge; and (3) in violation of § 6103.  *Weiner v. Internal Revenue Service*, 789 F.Supp.  655, 656 (S.D.N.Y.1992), *aff'd*, 986 F.2d 12 (2d Cir. 1993).  Significantly, courts ruling on motions to dismiss claims pursuant to § 7431 have required the plaintiff to plead the circumstances surrounding the alleged unlawful disclosure, including the tax information or returns disclosed, and when and to whom the alleged disclosures were made.  *See*, *e.g.*, *Cryer v. United States*, 554 F.Supp.2d 642, 644-45 (W.D.La. 2008) (granting motion to dismiss § 7431 claim for failure to state a claim because conclusory allegations that special agents of the IRS criminal division made oral disclosures to certain identified individuals and businesses that the plaintiff was the subject of a criminal investigation were devoid of any detail or supporting factual basis); *Chapin v. Hutton*, 1999 WL 550237, at * 8 (D.Id. June 22, 1999) (recommending § 7431 claims be dismissed for failure to state a claim where plaintiff only alleged the defendants had discussed the plaintiff's tax liabilities and other confidential matters with unauthorized persons and that such disclosures were not within a statutory exception, because such

vague and conclusory statements were insufficient to permit the court to determine whether a violation actionable under § 7431 had occurred), *adopted in relevant part by* 1999 WL 1315643, at *4 (D.Id. Nov.  24, 1999).  Similarly, in the instant case, Plaintiff fails to specify what documents or information was disclosed, when the alleged disclosures occurred, or to whom the disclosures were made.[24]  As such, not only has Plaintiff failed to sufficiently allege a plausible violation of § 7431, but Defendant IRS is unable to prepare a defense in opposition to such claim.

Moreover, by its terms, a claim pursuant to 26 U.S.C. § 7431 is properly asserted against the United States, rather than against the IRS.  26 U.S.C. § 7431(a)(1) (providing a taxpayer may bring a civil action seeking damages for willful or negligent inspection or disclosure of a tax return against any officer or employee of the United States "against the United States. . . .").  As such, because Plaintiff has failed to plead the elements of an unauthorized disclosure claim under § 7431, and the United States has not been named as a defendant, the Amended Complaint, insofar as Plaintiff alleges a claim against the IRS for allowing unauthorized inspections and disclosures of confidential income tax return information, should be dismissed, and IRS's motion should be GRANTED as to the § 7431 claim.

_____

[24] The allegations on which Plaintiff's § 7431 claim is based include that

The defendants obtained unauthorized private information regarding the plaintiff from the tax returns that the plaintiff filed with the Internal Revenue Service and the New York State Department of Taxation & Finance.

The defendants used the information regarding the plaintiff obtained from the Internal Revenue Service and the New York State Department of Taxation & Finance and provided it to external parties including Mr. Ajit Singh and Ms. Evelyne O'Sullivan after Ms.  O'Sullivan was discharged by the plaintiff as her attorney.

Amended Complaint at 22.

### G.     Defendant Singh

Plaintiff alleges her ex-husband, Defendant Singh, acted in collusion with Defendant Marcus and Defendants to harm Plaintiff "through her son."  Amended Complaint at 17.  Although not artfully pleaded, Plaintiff alleges Defendant Singh conspired with other Defendants, especially Marcus, Brisbane Defendants, and Plaintiff's former matrimonial attorney Defendant O'Sullivan, to arrange for Plaintiff to receive from Defendant Singh less in child support payments, and health, dental and child care expenses Plaintiff incurs with regard to their minor son.  *See* Amended Complaint generally at 18-29.  Defendant Singh moves to dismiss the claims against him on the basis that the Amended Complaint fails to comply with Fed.R.Civ.P. 8(a)(2)'s requirement that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Defendant Singh's Memorandum at 2-3, and that such claims arise only under New York laws regarding matrimonial and child support proceedings, over which this court has no jurisdiction.  *Id*. 4-6.  In opposition, Plaintiff maintains that he claims against Defendant Singh assert "tort and violations of laws unrelated to the granting of the divorce, determining alimony or support obligations or resolving claims regarding custody of their child."  Plaintiff's Response Memorandum at 3.  According to Plaintiff, although this court lacks jurisdiction over matrimonial and child custody and support proceedings, "[f]ederal courts do have jurisdiction to decide tort, contract or civil rights questions in cases arising out of a domestic relations context when the underlying domestic relations issues are not in dispute." *Id*.  In further support of dismissal, Defendant Singh maintains Plaintiff's continued failure to clarify against whom each of her claims is asserted requires dismissal of such claims.  Day Reply

Affirmation ¶¶ 9-17.

Plaintiff has conceded this court is without jurisdiction to resolve any matrimonial issues, including child support payments, health care, dental care, and child care, Plaintiff's Response Memorandum at 3.  Further, with regard to Plaintiff's assertions that Defendant Singh conspired with other Defendants to deprive Plaintiff of her civil rights in order to retaliate against Plaintiff for filing the EEOC employment discrimination charge, such claim should be dismissed, as discussed, Discussion, *supra*, at 34-37, for failing to state a claim.

Moreover, as discussed, Discussion, *supra*, at 42-43, the dismissal of the insufficiently pleaded federal conspiracy claims will destroy the basis under § 1367(a) for supplemental jurisdiction over any New York common law claims.  As such, insofar as any claims against Defendant Singh are not dismissed for failing to state a claim, or for lack of subject matter jurisdiction, the court should refrain from exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), over such claims because the dismissal of the insufficiently pleaded conspiracy claims renders such claims against Defendant Singh completely unrelated to the Title VII claims against NYSDOTF and the FMLA and ADA claims against the County Defendants.

### H.    Non-Moving Defendants O'Sullivan, ECC, Erie County, Reuter, and Stolzenburg

Defendants O'Sullivan, ECC, Erie County, Reuter, and Stolzenburg ("non-movants") have not moved to dismiss any claims against them.  Nevertheless, as discussed, Discussion, *supra*, at 37, district courts may, in the exercise of their inherent

authority, *sua sponte* dismiss any claims which are so patently without merit as to be deemed frivolous.  Significantly, here, the court has already recommended dismissal of all conspiracy claims against all Defendants based on Plaintiff's failure to allege any agreement between or among any of the Defendants.  Insofar as Plaintiff attempts to assert a conspiracy claim against the non-movants, as discussed, Discussion, *supra*, at 32-37, such claim is insufficiently pleaded, requiring dismissal of the conspiracy claim, thereby destroying the basis for supplemental jurisdiction over any New York common law claims alleged against the non-movants as they do not arise under the same core of operative facts as required by § 1367(a) (supplemental jurisdiction applies only to claims arising out of same case or controversy), Discussion, *supra*, at 42-43.

　　　Here, Plaintiff's state claims do not arise from the same nucleus of operative facts as Plaintiff's Title VII, ADA and FMLA allegations.  Accordingly, all claims against the non-movants should be *sua sponte* dismissed for failing to state a claim and for lack of supplemental jurisdiction, except for the FMLA and ADA claims asserted against the County Defendants.  Alternatively, the court should decline to exercise such jurisdiction. 28 U.S.C. § 1367(a); *see Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) (noting dismissal of pendent state claims is particularly appropriate where "the federal claim on which the state claim hangs has been dismissed"); *see also Lerner v.  Fleet Bank, N.A.*, 318 F.3d 113, 125 (2d Cir. 2003) ("A district court may exercise supplemental jurisdiction over state-law claims 'in any civil action of which the district courts have original jurisdiction,' as long as the state-law claims 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (quoting 28 U.S.C. §

1367(a)).

### H.    Dismissal with Prejudice

Despite the general rule that dismissal for failure to state a claim be without prejudice to permit the plaintiff to file an amended pleading that cures the defective pleadings, where the dismissed claims are so highly implausible that there is no reason to believe a valid claim might be stated, court are permitted to dismiss claims with prejudice.  *See Livingston v.  Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (observing dismissal is proper where allegations are "product of delusion or fantasy").  The dismissal of claims with prejudice is even allowed where, as here, the Plaintiff has paid the filing fee and is proceeding *pro se*.  *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding a district court may dismiss a frivolous complaint *sua sponte* even when the *pro se* plaintiff has paid the required filing fee).  Such inherent authority of the district court is necessary because, as courts of first impression, "district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."  *Id*. Here, the claims recommended for dismissal, including the conspiracy claims and the common law state claims, are so highly implausible that their dismissal should be with prejudice.

In particular, Plaintiff's alleged conspiracy claim is grounded in the fact that Plaintiff first made Abbas's acquaintance at a social gathering at Marcus's house in 2004, after Plaintiff had ceased working for NYSDOTF.  According to Plaintiff, Marcus,

upon realizing Plaintiff intended to use Abbas as a witness in her EEOC action against

NYSDOTF, became concerned that Marcus would be blamed for introducing Plaintiff to

Abbas, thus motivating Marcus to conspire with virtually every other person with whom

Plaintiff had contact, including co-workers, family members, law enforcement

personnel, her son's teachers, and health care providers, to obtain information Marcus

could supply to NYSDOTF.  The implausibility of this scenario, however, is evident from

the fact that despite including a statement from Abbas in the employment discrimination

claim Plaintiff filed with the EEOC, the EEOC found no probable cause supporting

employment discrimination by NYSDOTF against Plaintiff based on race, ethnicity,

religion or gender, thus undermining the efficacy of such evidence.  Nor has Plaintiff

alleged that Marcus actually suffered any repercussions in her employment with

NYSDOTF as a result of Plaintiff's submission of a statement from Abbas in support of

Plaintiff's EEOC employment discrimination charge.

The balance of Plaintiff's conspiracy claims are predicated on Defendant

Bogdan's alleged campaign of false and malicious rumors that Plaintiff obtained her

various employment positions only because of her race or ethnicity.  It is, however,

highly implausible that the same personal characteristics on which employers allegedly

relied to hire Plaintiff, as suggested by the rumors Plaintiff attributes to Bogdan, *i.e.*,

that Plaintiff's ethnicity was the reason she was hired by various employers, Amended

Complaint at 11-12, later became the basis for discriminatory acts against Plaintiff in

connection with her employment by those same employers.

Furthermore, the recommendation that Plaintiff's federal conspiracy and state

common law claims be dismissed does not extend to Plaintiff's Title VII claims against

NYSDOTF, or the ADA and FMLA claims against the County Defendants.  That neither

NYSDOTF nor the County Defendants have moved to dismiss such claims implies that

such claims are validly pleaded.  Nevertheless, the addition of the many extraneous

claims that are predicated on campaigns headed by Marcus to conspire with numerous

other individuals to engage in various tortious acts against Plaintiff to retaliate against

Plaintiff for filing an EEOC complaint alleging employment discrimination by NYSDOTF,

and by Bogdan to conspire to cause Plaintiff to suffer in her various employment

positions based on some belief that Plaintiff was able to obtain employment only

because of her minority status obscures Plaintiff's valid claims.  Accordingly, the claims

recommended to be dismissed should be dismissed with prejudice.

## 2.    Motion to Sever

State Defendants alternatively move to have the claims having no relation to

Plaintiff's employment at the NYSDOTF, which ended on December 23, 2003, severed

from the claims against the NYSDOTF.[25]  State Defendants' Memorandum at 9-10.  In

particular, State Defendants maintain that litigating the claims relating to Plaintiff's

employment at NYSDOTF with such other claims as, *inter alia*, Plaintiff's requests that

Defendant Singh pay proper child support and child care expenses, directing Erie

County to collect child support and remove monitoring devices from Plaintiff's property,

and claims against ECC for alleged sick leave, leave of absence, retaliation and ADA

---

[25] State Defendants do not assert they also seek to sever the claims asserted against Marcus.
Given that such claims arose only after the termination of Plaintiff's employment at NYSDOTF on
December 23, 2003, the court construes State Defendants' alternative request to sever as pertaining only
to the claims asserted against NYSDOTF relating to Plaintiff's employment there.

violations, present no common questions of law or fact such that, in the absence of the requested severance, NYSDOTF will be prejudiced, judicial economy will not be promoted, nor will settlement by facilitated.  *Id*. at 10.  In opposition, Plaintiff argues that because all the alleged acts of which Plaintiff complains make up a campaign of retaliation against the Plaintiff, severing the claims will result in prejudice to Plaintiff and will promote neither judicial economy or settlement.  Plaintiff's Memorandum at 12. State Defendants have not argued in further support of this request, maintaining that State Defendants' Motion is unopposed.  State Defendants' Reply at 2-3.

"Rule 42(b) of the Federal Rules of Civil Procedure vests discretion in a district court to order a separate trial of an issue . . . ."  *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990), *cert. dismissed*, 497 U.S. 1057 (1990).  Rule 42(b) states:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims. . . .

Fed.R.Civ.P. 42(b).

"The interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency."  *Vichare v.  AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996) (affirming district court's denial of plaintiff's motion to bifurcate plaintiff's Title VII claims from defendant's breach of fiduciary duty counterclaim because none of the issues promoted by Rule 42(b) would have been furthered by bifurcation).  In deciding whether to order separate trials, the court should consider the expected judicial economy as compared to the possible resulting inconvenience, delay, or prejudice to the parties.  *Athridge v. Aetna Casualty and Surety Co.*, 604 F.3d 625, 635 (D.C. Cir.  2010) (holding district

court's separation of action into two parts, first conducting jury trial on issue of driver's belief regarding permission to use vehicle before resolving issue of defendant insurance company's role in driver's defense was not abuse of discretion).  Bifurcation may be appropriate "where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue." *Vichare*, 106 F.3d at 466.

Here, the issue of bifurcation is only before the court should the District Judge disagree with the initial recommendation that Plaintiff's claims be dismissed against Defendants Marcus, Cercone, Brisbane Consulting, Bogdan, O'Sullivan, Erie County, Reuter, Stolzenburg, IRS, and Defendant Singh on the basis that Plaintiff has failed to adequately plead a conspiracy by such Defendants to engage in a campaign of retaliation against Plaintiff for filing an employment discrimination charge with the EEOC regarding Plaintiff's employment at NYSDOTF because such claims would otherwise be dismissed.  As such, the District Judge's denial of the motions to dismiss the New York common law and federal civil rights conspiracy claims would necessarily imply that all the claims Plaintiff asserts in the Amended Complaint are part of a conspiracy to retaliate against Plaintiff for complaining about the alleged discrimination Plaintiff endured while employed at NYSDOTF are interrelated.  In such case, severing these claims from the claims against NYSDOTF would not promote convenience, negation of prejudice or judicial economy.

Furthermore, should the District Judge agree with the recommendation to dismiss the conspiracy and New York common law claims, the only claims remaining in the action will be the Title VII employment discrimination claims against NYSDOTF and

the FMLA and ADA claims against the County Defendants.  Although unrelated,

bifurcation is not necessary to avoid undue burden in discovery by either NYSDOTF or

County Defendants because those Defendants need conduct discovery only as to the

claims asserted against them.  Accordingly, State Defendants' alternative motion to

sever is DENIED, with leave to renew should the action proceed to trial.


### 3.      Motion for a More Definitive Statement

As a further alternative, State Defendants move pursuant to Rule 12(e) for a

more definite statement, asserting the Amended Complaint, "consist[ing] of an un-

numbered set of rambling paragraphs," does not meet Rule 8's requirement that a

complaint contain "a short and plain statement of the claim showing that the pleader is

entitled to relief."  State Defendants' Memorandum at 11-12 (quoting Fed.R.Civ.P.

8(a)(2)).  State Defendants further maintain that it would be "unreasonable for

defendants to prepare a response to the [amended] complaint in its present form." *Id*.

at 12.  Alternatively, State Defendants request the court to strike the redundant,

immaterial and impertinent allegations pursuant to Fed.R.Civ.P. 12(f), or dismiss the

Amended Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6).  *Id*.  In opposition

to this request, Plaintiff maintains that the Amended Complaint is sufficiently pleaded,

that the use of single sentences to make a point prevents a detailed listing of specific

acts, and that Plaintiff avoided pleading many details that Plaintiff considered irrelevant.

Plaintiff's Memorandum at 12-13.  State Defendants have not argued in further support

of this request, maintaining that State Defendants' Motion is unopposed.  State

Defendants' Reply at 2-3.

As relevant, Fed. R. Civ. P. 12(e) provides that

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.

Fed. R. Civ. P. 12(e) ("Rule 12(e)").

"Whether to grant a motion for a more definite statement is in the discretion of the court." *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 456 (E.D.N.Y. 2009) (citing 5A Charles A.  Wright & Arthur R. Miller, Federal Practice and Procedure § 1377 (2d ed. 1990), and *Vaden v. Lantz*, 459 F.SUpp.2d 149, 150 (D.Conn.  2006)).

"Motions pursuant to Rule 12(e) are disfavored and should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 76 (E.D.N.Y. 2002).  "The rule is designed to remedy unintelligible pleadings, not to correct for lack of detail." *Kuklachev*, 600 F.Supp.2d at 456.  A motion for a more definite statement is only warranted if the complaint does not provide a short and plain statement as required by Fed.R.Civ.P. 8.  *See Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F.Supp.2d 260, 265 (E.D.N.Y. 2004).  Furthermore, "[m]otions for a more definite statement are generally disfavored because of their dilatory effect.  The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2005 WL 1395576, at *2 (E.D.N.Y. May 11, 2007) (footnotes and internal quotation marks omitted).

Here, the Amended Complaint, although prolix, is not so excessively vague and

ambiguous as to render it unintelligible.  The factual allegations are, for the most part,

grouped with other factual allegations pertaining to the same claims, with a few

appearing out of place in the Amended Complaint.  Nevertheless, the allegations are

sufficient to satisfy the lenient standard of notice pleading.  Moreover, many of the

allegations are completely irrelevant to the State Defendants with the exception of the

claimed conspiracy allegedly headed by Marcus.  Assuming, *arguendo*, the District

Judge agrees with the undersigned's recommendation to dismiss the conspiracy claim

as against Marcus, then all of the allegations occurring after Plaintiff's resigned from the

NYSDOTF on December 23, 2003, are irrelevant to Plaintiff's claims against

NYSDOTF.  Defendants have failed to explain why they cannot simply ignore those

allegations that are irrelevant to the NYSDOTF or what prejudice could result in the

absence of a more definite statement.[26]  *See Patrick Development, Inc. v. VIP

Restoration, Inc.*, 2010 WL 447930, at *2 (W.D.N.Y. Feb.  2, 2010) (denying motion for

a more definite statement where "defendant has not shown how the complaint is

unintelligible or what prejudice – *i.e.*, what loss of rights in later proceedings or at trial –

it will suffer if it answers or otherwise challenges the complaint in its current form.").

Insofar as State Defendants alternatively seek a more definite statement, State

Defendants' Motion is DENIED.

---

[26] Assuming the District Judge accepts the recommendation of dismissal as to all of Plaintiff's claims against all Defendants other than NYDOTF and County Defendants, the irrelevant assertions may also be subject to a motion to strike pursuant to Fed.R.Civ.P. 12(f) for lack of materiality.

**4.      Motion to Amend**

Plaintiff moves to file a Second Amended Complaint seeking to provide a clearer statement of her claims, to add her father as a Defendant, and to plead additional facts regarding events that have occurred since filing the Amended Complaint on October 25, 2010, all of which arise out of the same series of transactions or occurrences such that there are issues of fact and law in common with the allegations of the Amended Complaint.  Plaintiff's Motion at 7.  In brief, the new allegations Plaintiff seeks to assert include, *inter alia*, that Defendants have used criminals and police officers to harm Plaintiff and her son, that Brisbane Defendants conspired with Justice Curran to "illegally thwart" Plaintiff's attempts to obtain recourse against those involved in Plaintiff's matrimonial action in Erie County courts, that Cercone has physically and sexually assaulted former female clients who criticized his work, that Defendants attempted to arrange for Plaintiff to become romantically involved with a pedophile, posing great risk to Plaintiff's son, that her home was unlawfully, repeatedly, and needlessly searched and monitored with the assistance of her father, that Defendants caused Plaintiff to have an automobile accident and then bribed the auto mechanics Plaintiff hired to repair her vehicle to tamper with the vehicle and planted unspecified "things" in Plaintiff's belongings hoping to have Plaintiff subjected to criminal charges, that Defendants have arranged for constant surveillance of Plaintiff and her son, including normal bodily functions such as snoring and digestive traits, have adulterated Plaintiff's food with harmful substances, and have engaged in unspecified racketeering activity.

Plaintiff's motion to amend is opposed by IRS as futile on the basis that insofar

as Plaintiff has earlier indicated her intent to amend the pleadings to name the United

States as a party, rather than the IRS, Plaintiff's Motion fails to indicate the specific

items of tax return information allegedly and unlawfully disclosed.  IRS Reply at 4-5.

Plaintiff's Motion is also opposed by ECC Defendants on the basis that Plaintiff has

failed to attach a copy of the proposed second amended complaint, ECC Defendants'

Memorandum at 1; that Plaintiff has failed to establish good cause for moving to amend

beyond the deadline for such motions, *id.* at 2-4; and that the new allegations Plaintiff

seeks to assert will cause Defendants prejudice and are futile.  *Id.* at 4-5.[27]

Fed.R.Civ.P. 15 provides that leave to amend a pleading "shall be freely granted

when justice so requires."  An amended complaint may be filed pursuant to

Fed.R.Civ.P. 15(a) where the new allegations do not unduly prejudice an opponent, are

not the result of undue delay or bad faith, and are not futile.  *Foman v. Davis*, 371 U.S.

178, 181 (1962).  Absent a showing that significant additional discovery burdens will be

incurred or that the trial of the matter will be significantly delayed, amendment should

be permitted.  *Block v. First Blood Associates,* 988 F. 2d 344, 350 (2d Cir. 1993).  In the

instant case, Plaintiff's failure to file a copy of the second proposed amended complaint

is not fatal to her motion, but Plaintiff's Motion is DENIED for failing to establish good

cause for the motion, and because the new claims Plaintiff seeks to assert are futile.

"Ordinarily, a movant's failure to submit a proposed amended complaint

constitutes sufficient grounds to deny a motion to amend."  *Murray v. New York*, 604

---

[27] The remaining Defendants have not filed any papers opposing Plaintiff's Motion.  The court notes that nowhere within Plaintiff's papers filed in connection with Plaintiff's Motion are there any new allegations asserted as against the unopposing Defendants.

F.Supp.2d 581, 588 (W.D.N.Y. 2009) (citing *LaBarbara v. Ferran Enterprises Inc.*, 2009 WL 367611, at * 3 (E.D.N.Y. Feb.  10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought.")).  Nevertheless, provided "the movant's papers adequately explain the basis for, and nature of, the proposed amendment, [ ], the failure to attach a proposed amended complaint to the motion is not necessarily fatal." *Murray*, 604 F.Supp.2d at 588.

Here, Plaintiff's papers submitted in support of her motion to amend adequately explain that the basis for and nature of the proposed amendment is to add her father as a defendant and to set forth allegations pertaining to events that have occurred since the Amended Complaint was filed.  Plaintiff's Affidavit at 7.  Plaintiff also submits a recitation of additional facts which, according to Plaintiff's argument in support of the motion, Plaintiff seeks to allege in addition to those alleged in the Amended Complaint. Plaintiff's Affidavit at 4-7.  Plaintiff makes clear that these new factual allegations are in addition to those asserted in the Amended Complaint, Plaintiff's Affidavit at 7, which incorporates by reference the original complaint.  Amended Complaint at 11.  Such proposed allegations, if true, would establish Defendants' continuing campaign of conspiring to retaliate against Plaintiff.  As such, Plaintiff's failure to attach the second proposed amended complaint to her motion is not fatal to the motion.  Plaintiff's failure to establish good cause for filing the late motion to amend and the futility of the proposed amendments, however, is fatal to Plaintiff's Motion.

In particular, the February 22, 2010 Case Management Order (Doc.  No.  38),

established March 26, 2010, as the deadline for moving to join additional parties and to amend the pleadings.  Although a motion to amend a complaint brought pursuant to Fed.R.Civ.P.15(a) provides that leave to file an amended complaint "shall be freely given," this "lenient" standard "must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  *Grochowski v. Phoenix Construction*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15(a) and 16(b)).  S*ee Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439, 447 (W.D.N.Y. 1997) (a Rule 16(b) scheduling order "shall not be modified except upon a showing of good cause").   As such, once the February 22, 2010 Case Management Order (Doc. No. 38), was issued, the deadlines set in such order could not be amended absent good cause to amend.

Further, where a requested pleading amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993).  A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6).  *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F.Supp.2d 657, 666 (S.D.N.Y.2001).  An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground."  *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir.1999).

Here, Plaintiff fails to allege any "good cause" for amending the Scheduling Order to permit filing a further amended complaint, and the motion can be denied on that basis alone, with regard to the assertion of additional facts establishing an ongoing conspiracy or a claim against her father.  "A finding of good cause depends on the

diligence of the moving party."  *Grochowski*, 318 F.3d at 86 (citing *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340-41 (2d Cir. 2000) (refusing to find good cause for late notice to amend where pleadings established plaintiff was in possession of the information necessary to assert new claim prior to expiration of scheduling order's deadline for motions to amend)).

With regard to the allegations concerning Plaintiff's father, Plaintiff included similar allegations against her father in the Amended Complaint, such that Plaintiff could have named her father as a defendant at that time.  *See*, *e.g.*, Amended Complaint at 16 (alleging Plaintiff's father, Devendra Singh, an ECC employee, conspired with other Defendants by, *inter alia*, requesting Marcus provide information regarding Plaintiff's romantic relationships and character, believing the rumors disseminated by Marcus about Plaintiff being a lesbian or promiscuous and has affairs with married men, allowing Defendants into the home to search Plaintiff's personal belongings and computer, providing Defendants with information regarding Plaintiff's computer activities, allowing Defendants to hack into Plaintiff's personal e-mail account, and providing Defendants with information regarding Plaintiff's unspecified medical condition).  As such, Plaintiff could have named her father as a defendant in the Amended Complaint and, in the absence of any good cause for failing to do so, the motion is DENIED.

Additionally, as it appears that Plaintiff's proposed claims against her father are based on conspiracy and suffer from the same lack of specificity and factual basis as Plaintiff's federal conspiracy claims which are also recommended for dismissal, Discussion, *supra*, at 34-37, Plaintiff's proposed claims are also futile.

Insofar as Plaintiff's maintains she seeks to assert in the Second Amended Complaint additional facts regarding events that have occurred since filing the Amended Complaint on October 25, 2010, thereby implying Plaintiff previously could not have earlier asserted such allegations, a plain reading establishes that Plaintiff is not alleging any new causes of action.  Rather, Plaintiff seeks to add numerous allegations of events which, if true, establish the alleged conspiracy in which Defendants engaged to retaliate against Plaintiff continues.  For example, Plaintiff seeks to allege that "[d]espite the filing of the Amended Complaint, Erie Community College management did not take any steps to stop the monitoring and repeated violations of the plaintiff's privacy.  The plaintiff is still being subject to monitoring that other Erie Community College employee are not subjected to.  Plaintiff's emails are still being read and shared with unauthorized parties."  Plaintiff's Affidavit at 6.  Such allegations do not assert new claims; rather, they are additional factual allegations which establish that the unlawful conduct of which Plaintiff has already complained continues.  Although at a trial on these claims, Plaintiff would be permitted to introduce evidence of these allegations to establish the alleged continuing campaign of retaliation, these allegations need not be pleaded and Plaintiff's Motion to amend to assert such allegations is DENIED.

Nevertheless, given Plaintiff's *pro se* status, the court liberally construes Plaintiff's motion, as required, *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir.  2009) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)), as a motion to

supplement pursuant to Fed.R.Civ.P. 15(d) ("Rule 15(d)") (permitting allegations of any "transaction, occurrence or event that happened after the date of the pleading to be supplemented."). Accordingly, Plaintiff's motion, construed as seeking leave to supplement pursuant to Rule 15(d), is GRANTED.

Finally, the only new claim Plaintiff seeks to allege is a criminal racketeering claim pursuant to 18 U.S.C. § 245 ("§ 245"), which criminalizes the use of force or threat of force to deny or interfere with one's civil rights. Not only has Plaintiff failed to provide any good cause for bringing this claim earlier, § 245 does not provide for a private, civil cause of action and Plaintiff, as a private citizen, is without any standing to criminally prosecute Defendants under § 245. *See Leeke*, 454 U.S. at 86-87; *Esposito*, 355 Fed.Appx. 511. As such, permitting Plaintiff to file a second amended complaint asserting a cause of action under § 245 would be futile and is DENIED.


## CONCLUSION

Based on the foregoing, the motions to dismiss filed by State Defendants, Brisbane Defendants, Bogdan, IRS, and Singh (Docs. Nos. 52, 53, 59, 74, and 82) should be GRANTED, with the exception that insofar as Bogdan's motion requests sanctions, the motion should be DENIED. State Defendants' alternative requests to sever and for a more definite statement are DENIED. Plaintiff's motion for leave to file a second amended complaint (Doc. No. 73) is DENIED and, construing such motion as seeking leave to supplement, is GRANTED. Further, insofar as any claims are asserted against Defendants O'Sullivan and Stolzenburg, who have not moved to dismiss, such claims should be DISMISSED pursuant to the court's inherent authority to

manage its docket, and the state claims should be DISMISSED against the County

Defendants for failure to state a claim.


SO ORDERED as to State Defendants'
alternative requests to sever and for a more
definite statement, and Plaintiff's motion for
leave to file a second amended complaint.


    /s/ *Leslie G. Foschio*

_____
      LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE




                    Respectfully submitted, as to the motions
                    to dismiss,

                    /s/ *Leslie G. Foschio*

           _____
                      LESLIE G. FOSCHIO
            UNITED STATES MAGISTRATE JUDGE


DATED:       July <u>28</u>, 2011
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

Plaintiff is advised that

**Any appeal of this Decision and Order denying Plaintiff's request for leave to file an amended complaint must be filed with the Clerk of the Court within 14 days of service of the Decision and Order pursuant to Fed.R.Civ.P. 72(a).**

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       July <u>28</u>, 2011
             Buffalo, New York